# Richmond.

CARTER v. HOUGH & AL.

MARCH 20th, 1890.

TRUSTS—*Termination—Case at bar.*—E. held judgments amounting to about $20,000 against her son B., and assigned them in trust for stated objects, the balance on such trusts as B. might appoint, and if he failed to appoint, then in trust to pay the interest to B., free from liens of any of his present creditors. E. reserved power to revoke the trust, and afterwards assigned the judgments to B. HELD: Under the premises, the judgments having become B.'s absolutely, the trust ceased and could not be interposed as against his creditors and mortgagees.

Appeal from decree of circuit court of Loudoun county rendered October 22, 1888, in a chancery suit wherein Hough, Gray & Co. were complainants, and B. G. Carter, the appellant, was defendant. Opinion states the case.

*Joseph Christian* and *G. E. Garrett*, for the appellant.

*J. W. Foster, Ed. Nichol,* and *Holmes Conrad,* for the appellees.

LACY, J., delivered the opinion of the court.

This suit was by bill in equity by the appellees and other lien creditors of the appellant, Benjamin G. Carter, to subject his real estate to the lien of their judgments, and certain trust-deeds. In the progress of the suit an account of liens was taken. Among these judgment liens were the liens of three

judgments confessed by the said Benjamin G. Carter in favor of his mother, Mrs. E. O. Carter: (1) judgment of March 8, 1878, for $5,004 17; (2) judgment of March 8, 1878, for $2,106; (3) judgment of July 24, 1878, for $12,000. These judgments were conveyed in trust by the said creditor to a trustee, Henry Harrison, on the 1st day of October, 1878, upon the following trusts: *First*, to pay the expenses of the trust, etc.; *secondly*, to pay certain debts therein named; *thirdly*, to pay other named judgments; *fourthly*, to pay any other debt or debts for which the grantor therein should be liable for as surety for the debtor, her son, Benjamin G. Carter. As to these, however, if paid out of other funds than the proceeds of this trust by the said grantor, then so much of the trust fund to revert to the grantor, and her personal representative. It was provided, *fifthly* (and it is as to this that this appeal is taken): " To hold the residue, as to any part thereof, or any interest therein, upon such trust as the said Benjamin G. Carter may from time to time appoint by writing under his hand and seal, and until and in default of such appointment, then in trust to pay the income and profit of said residue to said B. G. Carter, for his maintenance and support, free from any lien or claim thereon of any present creditor of the said B. G. Carter, and in no way subject or liable to any of his present debts or engagements. But the said E. O. Carter reserves to herself the right at any time during her life, by writing under her hand, to revoke the trusts herein fifthly declared, or which the said B. G. Carter may appoint, and thereupon dispose of the subject-matter thereof as she may deem proper."

The provisions of this trust provided therein—first, secondly, thirdly, and fourthly—were all executed; and on the 26th day of December, 1882, Mrs. E. O. Carter conveyed by deed to B. G. Carter certain real estate named therein, and a bond due by J. W. F. McCrae to her, and " certain judgments in favor of E. O. Carter, of the circuit court of Loudoun, now in the hands of Harrison & Powell for collection. This bond and

these judgments the said E. O. Carter hereby assigns, and directs the said Harrison & Powell to hold the same subject to the order of the said Benjamin G. Carter." This firm of Harrison & Powell was composed of the above-named Henry Harrison, trustee, and one L. H. Powell; and the said L. H. Powell was appointed special commissioner to sell a part of the real estate of B. G. Carter, and upon his report of sales he was ordered to distribute the fund to the payment of the debts directed to be paid by the trust-deed of October, 1878, set forth above. And on the 26th of October, 1883, the court received a further report of L. H. Powell, special commissioner, and ordered the proceeds to be distributed or disbursed in the payment of other debts of B. G. Carter than those due to E. O. Carter under the deed of October 1, 1878, reserving the question as to whom these belonged. This the commissioner did, and reported that, as ordered, he had not paid the judgments due E. O. Carter, there being conflicting claims as to them; and on the next day a decree was rendered directing the funds to be distributed to certain creditors of B. G. Carter other than those of E. O. Carter. And at the January term of the court, 1884, a further account of debts of B. G. Carter was ordered, and a settlement of the trustee account of Henry Harrison, trustee; and an inquiry was ordered as to the ownership of the judgments of E. O. Carter, set forth above, and to whom the funds in the hands of L. H. Powell, special commissioner, were payable. March 19th following, the commissioner to whom the foregoing was referred, reported that these judgments in favor of E. O. Carter were conveyed by the deed of December 26, 1882, *supra*, by E. O. Carter, with other matter, to B. G. Carter. (2) By deed of E. O. Carter, of May 3, 1883, she revokes the deed of December 26, 1882, and, subject to her own debts, conveys the same to B. G. Carter. (3) By deed of March 13, 1884, the deed of December 26, 1882, is confirmed, and the said judgments, or so much as was due on them. Therefore these funds

are appropriated to the payment of the debts of the appellees, Elgin, Daily, and others, creditors of B. G. and E. O. Carter. On October 28, 1884, Henry Harrison was relieved as trustee under the deed of October 1, 1878, upon his own motion; and, on the same day there was a further decree for the payment of the debts of B. G. Carter out of the funds in hand, a report having been received the day before of an account of debts, from which the E. O. Carter judgments are omitted. There were other similar decrees rendered for the payment of judgments, not necessary to be recited at length : and at the January term, 1887, another account of liens was ordered, and an account of all payments made on any judgments—which report was made, and the E. O. Carter judgments again omitted. That the entire proceeds of the sales had been distributed by L. H. Powell, under decree of the court, and that the account of Henry Harrison, trustee, showed no error; and at the April term, 1887, this report was received and confirmed, and, L. H. Powell declining to act further to make collections, the commissioners were directed to do this. October, 1887, B. G. Carter moved the court to appoint a trustee in lieu of Henry Harrison, and the appellant, William Gaines, was so appointed; and he filed his petition, claiming the E. O. Carter judgments as preferred liens which had been ignored, and asked for their enforcement, and that the money distributed to junior liens be required to be repaid into court, etc.

At the October term, 1887, an account was ordered of judgment liens unpaid upon the land of B. G. Carter still subsisting, and the commissioner reported $23,086 21 of judgments unpaid, and among them, first, the E. O. Carter judgments, aforesaid. The appellees excepted to the report of the E. O. Carter judgments, now reported as amounting to $19,982 69, upon the ground that Mrs. Carter, by the said deed of December 26, 1882, revoked the deed of October 1, 1875, and gave these judgments absolutely to B. G. Carter, whereby they ceased to be liens, and especially as to the interest, amounting to $7,964; that this

was, in any event, at the disposal of B. G. Carter, under the original deed of October 1, 1878. And a paper was filed by Gaines, trustee, dated June 9, 1885, and proved by the deposition of Thomas H. Costello, executed by Mrs. Carter, by which she declared that the deed of December, 1882, did not supersede the deed of October, 1878, saying: "I desire it [the deed of October, 1878] executed in its entirety, with full power to B. G. Carter to dispose of the benefit ensuing therefrom as he may see fit."

On the 27th of March, 1888, Mrs. Carter revoked the deed of October, 1878, as to $2,200 in favor of debts to that amount due by her. On May 1, 1888, the commissioner reported the sum of $3,817 32 paid by Mrs. Carter, and to be reimbursed to her under the fourth clause of the deed of October, 1878, out of the judgments assigned under the fifth clause of the said deed of October, 1878.

And on the 16th day of October, 1888, Miss Kate E. Carter filed her petition in the cause, setting forth that in March, 1887, B. G. Carter applied to her to borrow $3,000 upon the security of a deed in trust upon his lands in Loudoun county, representing that the only liens thereon amounted altogether, as shown by a statement in the handwriting of his counsel, to the sum of $2,400, to which was appended the statement as follows, by his counsel: "I feel sure that $1,980 covers all the liens on B. G. Carter's property except a judgment of Klienfelter's for, say, $500; making $2,400 total." And the trust-deed was executed, and the money lent; and B. G. Carter now claims that the E. O. Carter judgments are prior liens for his benefit as against this debt.

On the 22d day of October following, 1888, the decree appealed from was rendered, when the court overruled the exceptions of Gaines, trustee, to the disallowance of the E. O. Carter judgments by the report of Commissioner Wise of October 11, 1888, and the allowance of the amount paid by E. O. Carter under the fourth clause of the October 1, 1878, deed, as a

credit on these judgments as set forth, substantially, above, and sustained an exception by Elgin as to a small debt which had appeared to have been paid; and approved the report of the commissioner otherwise, decreed a first lien in favor of E. O. Carter's` estate of $235 42; sustained the Kate E. Carter claim; decreed the payment of the debts of B. G. Carter, other than the E. O. Carter judgments, and provided for a sale of his lands in default of payment before December 15, 1888. From this decree B. G. Carter, appealed, together with William Gaines, trustee.

This decree is plainly right, conceding all for the deed of October, 1878, which the appellants claim for it. The power was granted to B. G. Carter to appoint the fund by writing under seal. This he clearly did as to the Kate E. Carter debt. But, under the said deed of October, 1878, the grantor reserved the right to revoke the trusts, and this she did as to the $22,000; and by its terms it was revoked as to the above mentioned sum of $3,817 32, paid by Mrs. Carter under the fourth clause. It has been observed that by the terms of the fifth clause of the deed of October 1, 1878, it is made to apply to the then existing debts of B. G. Carter. And B. G. Carter, desiring to avail of the real estate conveyed to him, subsequently, as a basis to secure future credit, and to enable him to contract future debts, by deed of December 26, 1882, Mrs. Carter, being then old and infirm, acting under his guidance (as we may well believe), conveyed judgments in her favor to him, which are reported by the commissioner to be these, and to which, it is reasonable to believe, reference was had in absolute property, and subsequently declared, in the writing of June, 1885, that she wished B. G. Carter to dispose of these E. O. Carter judgments, now clearly defined, as he may see fit. B. G. Carter has availed himself of his large powers, not only by the prescribed mode, by his writing under his hand and seal, but, having recourse to still higher and broader powers, he has availed of his mother's reserved powers, and made

himself thus the absolute owner of this fund—traded upon it,
borrowed upon the faith of it, used it, enjoyed it, literally, as
he saw fit, until he has practically consumed it. And he can-
not be entertained to practically use it as he shall see fit again,
through the device of a substituted trustee. For his own bene-
fit, he procured its revocation, and, in effect, discharged the
trustee; and the trust has ceased to exist, and there are no
functions devolving upon the trustee under the trust-deeds;
and the petition of the substituted trustee might well have
been dismissed. The effect of the decree appealed from is
substantially this, and the same is without error, and must be
affirmed, and the cause remanded to the circuit court of
Loudoun to be proceeded in in accordance therewith, in order
to a final decree in the cause.

FAUNTLEROY, J., dissented.

DECREE AFFIRMED.