JENNIE L. BROGA, Individually and as Executrix of the Last Will and Testament of DWIGHT C. BROGA, Deceased, v. ROME TRUST COMPANY OF ROME, NEW YORK, and Others, Defendants.

Supreme Court, Oneida County, May 5, 1934.

*James T. Cross*, for the plaintiff.

*Searle & Searle*, for the defendant Dwight C. Broga, Jr.

*James M. O'Hara*, for the defendant Isabel Dorhamer.

*George F. Lee*, for the defendant Margaret E. Broga.

*Luther S. Evans*, for the defendant Rome Trust Company.

*J. A. Farrell*, for the defendant Leah Belle Drisko.

SMITH, E. N., J.   Dwight C. Broga died on or about the 22d day of July, 1933, leaving a last will and testament which was duly admitted to probate on the 20th day of September, 1933, and of which the plaintiff is the executrix.

On or about the 2d day of May, 1929, Broga and the defendant Rome Trust Company entered into an agreement, pursuant to which Mr. Broga deposited with the trustee three life insurance policies issued upon his life; one, dated December 26, 1926, for $12,500, issued by the New York Life Insurance Company; one, dated October 5, 1905, for $1,500, issued upon his life by the Mutual Benefit Life Insurance Company, and one for $10,000, issued upon his life by the Mutual Benefit Life Insurance Company, making a total of $24,000.   Out of the proceeds of these three life insurance policies the trustee, at the death of the settlor, was to pay $1,000 to Leah Belle Drisko; $1,000 to Isabel Dorhamer; $8,000 to Jennie S. Williams (whom, subsequent to the creation of the trust, the decedent married and who is the plaintiff herein);

" To Dwight C. Broga, Jr., of Rome, N. Y. [grantor's son], Five Thousand Dollars, ($5,000.00) as follows: The interest to be paid annually to him until the principal sum is used or paid; said trustee shall pay when he enters college for his necessary support, expenses and tuition not exceeding One Thousand Two Hundred Fifty

Dollars, ($1,250.00) per year; if his college or training school education is completed before the death of the grantor, then he is to be paid Two Thousand Five Hundred Dollars, ($2,500.00) at the grantor's death or on becoming 25 years of age and the remainder of said $5,000.00 on becoming 30 years of age.

" To Margaret E. Broga, of Rome, N. Y. [grantor's daughter], Five Thousand Dollars, ($5,000.00) as follows: The interest to be paid annually to her until the principal sum is used or paid; said trustee shall pay when she enters college for her necessary support, expenses and tuition not exceeding One Thousand Two Hundred Fifty Dollars, ($1,250.00) per year; if her college or training school education is completed before the death of the grantor, then she is to be paid Two Thousand Five Hundred Dollars, ($2,500.00) at the grantor's death or on becoming 25 years of age and the remainder of said $5,000.00 on becoming 30 years of age."

The trust agreement contains the following clauses:

" If there is not sufficient property in the grantor's estate other than *said insurance* to pay debts and funeral expenses, then the deficiency of such debts and funeral expenses shall be paid out of this fund.

" *After payment of the above specified sums and amounts the rest, residue and remainder of said fund shall be divided equally between said Dwight C. Broga, Jr. and Margaret E. Broga.*

" The grantor reserves to himself during his life all payments, dividends, surrender values and benefits of any kind which may accrue on account of any of the aforesaid policies, and the right at any time to assign, pledge or use said policies, or any of them, or to change the beneficiary thereof, to borrow money thereon, or for any purpose, without the consent, approval or joinder of the trustee or any beneficiary thereunder. *It is the intent that the trust shall be operative only in respect of the proceeds of such policies as in terms may be due and payable to the trustee at the time of the death of the grantor or thereafter, after deduction of all charges against the policies by way of advances, loans, premiums or otherwise.*

" It is agreed that the grantor may, by instrument in writing, delivered to the trustee, modify or alter this agreement, in whole or in part. * * * or the grantor may by such instrument terminate this agreement."

On the 22d day of November, 1930, Dwight C. Broga took out of the trust the $1,500 insurance policy, and on the 17th of May, 1933, the $10,000 insurance policy and surrendered them, taking the cash surrender value thereof, as he had a right to do under the agreement. This left in the hands of the trustee only the $12,500 policy.

On the 19th of May, 1933, there was issued to him by the Mutual Benefit Life Insurance Company of Newark, N. J., upon his life, a policy for $5,000, payable to the Rome Trust Company " as trustee under a Trust Agreement dated 20th of May, 1929."

On the 18th of July, 1933, he took the $12,500 policy out of the trust and changed the beneficiary thereof from the Rome Trust Company, as trustee, to Jennie L. Broga, his wife and the plaintiff herein, as he had a right to do under the agreement.

The $5,000 policy, taken out May 19, 1933, was never delivered to the Rome Trust Company, nor was it informed of its existence until after the death of Mr. Broga. The Rome Trust Company, however, was the beneficiary named in the policy, to receive the proceeds thereof in trust, however; the terms of its trusteeship were expressed in the trust instrument of May 2, 1929.

The effect of this transaction with the Mutual Benefit Life Insurance Company was to reduce from $10,000 to $5,000 its carriage on Mr. Broga's life and to give to Mr. Broga the cash surrender value of the original $10,000 policy.

At no time did Mr. Broga by any instrument in writing delivered to the trustee, modify or alter the trust agreement.

The sequence of events during the last few months of Mr. Broga's life should be noted. On the 12th of May, 1933, he had made application for life insurance in the sum of $10,000, " payable to the Rome Trust Company, of Rome, New York, as trustee, in accordance with the trust agreement dated May 20, 1929." In this application he states his outstanding life insurance to be $13,500 (sic) New York Life and $10,000 Mutual Benefit Life. Subsequently and before the issuance of the policy, he reduced his original application from $10,000 to $5,000. This policy was issued under date of May 19, 1933. In the meantime and about May 17, 1933, Mr. Broga took the $10,000 policy out from under the trust, taking the cash surrender value. On the 14th of July, 1933, he executed his will, according to which he gave $1,000 to his daughter Margaret Elizabeth Broga; $1,000 to his son Dwight C. Broga, Jr.; $500 to Leah Belle Drisko; $500 to Isabel Dorhamer, and the rest to his wife, the plaintiff. On the 18th of July, 1933, he took the $12,500 policy out from under the trust and changed the beneficiary thereof from the Rome Trust Company to his wife, the plaintiff herein. On the 22d of July, 1933, Mr. Broga died.

From the foregoing it appears that the taking of the $10,000 policy out from under the trust and taking out the $5,000 policy were coincident acts, and that after these things were done and up until the 18th of July, 1933, there remained under the trust agreement, of the policies delivered to the trustee, only the $12,500 policy.

He made his will on the fourteenth day of July, and on the eighteenth day of July he took the $12,500 policy out of the trust and changed the name of the beneficiary thereof from the Rome Trust Company to his wife, which left the trustee in the possession of no financial recourse. It will be noted that the provision of the will, which in its fifth clause attempted to revoke the trust agreement, was made while this $12,500 insurance policy was still in the trust.

Pursuant to an agreement between the estate and the Rome Trust Company, the amount of this $5,000 policy was collected by the Rome Trust Company and is retained by it as a special trust fund " until and to await the determination of a competent court as to the title thereto and the right and interest of each person entitled to share therein, at which time it will pay and distribute said fund, plus interest, as shall be determined by such court."

The last will and testament of the deceased, after certain specific bequests, contains these two clauses:

" *4th.* All the rest, residue and remainder of my property, of every name and nature, and wheresoever situate, I give, devise and bequeath unto my wife (Jane) Jennie L. Broga, to be hers absolutely and forever."

" *5th.* I hereby annul, revoke and set aside any trust agreement which I may have made relating to life insurance on my life and/or otherwise, *so far as I have the legal right to make such revocation,* and it is my will that all the proceeds, rights and benefits arising out of and in connection with such revocation shall accrue to my said wife, and I give, devise and bequeath all such proceeds, rights and benefits to her, absolutely and forever."

It is alleged in the complaint " that there is not sufficient property in the estate of said Dwight C. Broga, other than said insurance, to pay debts and funeral expenses." The record is devoid of proof on this subject.

The proceeds of the $5,000 insurance policy are moneys in the hands of the Rome Trust Company, as trustee. While the policy was never delivered to it, it, as trustee, stands in no other or different position than any beneficiary of a life insurance policy. It was the beneficiary; it had the right to collect the insurance moneys; but it holds the moneys as trustee, and its duties as trustee are defined by the unrevoked provisions of the trust agreement. The provision of the will, above quoted, did not change the beneficiary of this policy. While in the policy Mr. Broga reserved the right to change the beneficiary, such change could only be made " upon return of the policy to the Company, at its office in Newark, New Jersey, with the insured's written request for the appropriate endorsement of the policy by the Company." Nothing of this kind

was done. So that the proceeds of this policy are in the hands of the Rome Trust Company, as trustee, as above noted.

All the provisions in the trust agreement, excepting only the provisions for the use and distribution of the items of $5,000 each, in all $10,000, to his children, are testamentary in character. This applies to all the payments to be made in cash, above noted, to the provision as to the residuary estate, and to the provision as to the payment of debts and funeral expenses; as to these there is no trust feature at all; the Rome Trust Company was but an agency to collect upon the insurance policies and to make these payments.

A revocable trust may be revoked in any manner which shows a clear and definite purpose on the part of the settlor of the trust to revoke the same, unless the instrument itself prescribe the manner in which the trust may be revoked, in which event the trust becomes irrevocable, excepting as it be revoked in the manner prescribed in the trust instrument.

In so far as a trust irrevocable in form is testamentary in character, however, it may be revoked by will as to the testamentary provisions only.

Where there are such testamentary provisions, " equity, because of exceptional facts, in rare cases, has revoked a trust, or held it revocable by the grantor, because plainly a testamentary instrument. But generally a valid trust is not affected by the death of the donor, testate, where he dies without having exercised his power of revocation. Whether a will impliedly revokes a revocable trust is a question of intention." (26 R. C. L. 1206.)

It is my opinion that, so far as the trust agreement was testamentary in character, it should be held to have been revoked by the will, irrespective of any general provision as to the manner in which the instrument could be revoked. If any other rule were applied to such cases as this, the greatest of confusion and injustice would arise where a person had disposed of his property not by creating a real trust but through the form of a trust testamentary in character rather than through the form of a will, and then, by a will, had made disposition of his property as to which he had already made testamentary disposition in an instrument in the form of a trust agreement. Under such circumstances, even where the manner of revocation is specified in the trust instrument, a court of equity, having the power to decree a revocation of· an irrevocable trust through the instrumentality of a will revoking the trust as to the provisions of the trust agreement which were testamentary in character, certainly would have the power to decree the revocation of a revocable trust as affecting the provisions thereof testamentary in character, where the intent and purpose

of the decedent is clear, even though the precise form of revocation set up in the trust instrument may not have been followed. As to testamentary provisions, a court should, in a proper case, exercise such power.

In the trust agreement in the instant case, the grantor had reserved to himself all payments, dividends, surrender values and benefits of any kind which might accrue on account of the policies listed in the trust agreement, and the right to assign, pledge or use said policies, or to change the beneficiaries thereof, to borrow money thereon, or for any purpose, without the consent of the trustee or any beneficiary under the trust. The trust was to operate only in respect of such proceeds of the policies as might be due at the time of the death of the grantor. As to all except the $12,500 policy, what the insured did was to use the dividends and the cash surrender values and allow the policies to lapse; he never pledged the policies. The policies did not cease to exist merely because he took the cash surrender or loan values, but they did cease to exist because he failed to pay further premiums thereon. When he made his will on the fourteenth of July there still remained in the hands of the trustee the $12,500 policy. On the eighteenth of July, apparently not satisfied as to the efficacy of the provisions of the will, Mr. Broga changed the name of the beneficiary in the $12,500 policy from the Rome Trust Company as trustee to that of his wife. When this was done, no property remained in the possession of the trustee. There remained, however, the $5,000 policy running to the Rome Trust Company " as trustee under the trust agreement."

In the fifth article of his will he sought to revoke and set aside any trust agreement relating to life insurance, *in so far as he had the legal right* to make such revocation. As has already been shown, he had no legal right to revoke by will the trust agreement, excepting to the extent that it was testamentary in character. To such an extent, as has already been shown, the revocation clause contained in the will was effective. While it is the general rule that where a method of revocation is provided in a trust instrument, that method must be followed in order to effect a revocation, this has no application to provisions purely testamentary in character; the instrument became irrevocable excepting it be revoked in the manner prescribed. An irrevocable trust testamentary in character may be revoked. The provision for terminating the trust reads: " It is agreed that the grantor may, by instrument in writing, delivered to the trustee, modify or alter this agreement, in whole or in part   *   *   *,   or the grantor may by such instrument terminate this agreement." The clear meaning of this provision

is that the instrument terminating the trust was to be delivered to the trustee. No such instrument was ever delivered to the trustee, and the will was not such an instrument; but the will was effective in revoking the testamentary provisions of the trust agreement.

This fifth clause of the will also contained the provision that it is his will " that all the proceeds, rights and benefits arising out of or in connection with such revocation shall accrue to my said wife, and I give, devise and bequeath all such proceeds, rights and benefits to her, absolutely and forever." But, for the reasons heretofore shown, this provision had and could have no effect upon the $5,000 policy outstanding in the name of the trustee; nor was it intended to affect that policy. The wife received " such benefits " through the $12,500 life insurance policy taken out of the trust for her benefit. Had Mr. Broga intended that the proceeds of the $5,000 policy should go to his wife he would have had her name inserted in that policy, as he did in the $12,500 policy.

To summarize the results: (1) All testamentary provisions in the trust agreement were revoked by the will. (2) The provisions of the trust agreement in behalf of his two children, the defendant Dwight C. Broga, Jr., and Margaret E. Broga, remain. (3) The proceeds of the $5,000 policy remain in the Rome Trust Company as trustee under the trust agreement, to be administered by it according to the terms of the trust agreement, for the benefit of the two aforementioned children of the decedent.

Let findings of fact and conclusions of law be prepared in accordance herewith, to be settled upon two days' notice if not agreed to.

Judgment accordingly.