Thomas A. Aurelio, J.
The surviving trustees move for the judicial settlement of their intermediate accounts of two trusts created by the settlor Sidney R. Kent in 1939 and one created in 1934.
By indenture of trust dated April 12, 1934 the settlor created an irrevocable trust consisting of a contribution of $200,000 in cash, which corpus was thereafter substantially increased by the transfer of other assets. It provided that the income thereof was to be paid to his wife, Lilyan White Kent, now Lilyan White Lamotte (hereinafter referred to as “ Mrs. Lamotte ”) for her life, and upon her death the principal was to be paid to the settlor if he survived her. In the event he predeceased her, the principal was to be paid to the issue if any of the said Sidney R. Kent and Lilyan White Kent, per stirpes, or, in the absence of issue, to those appointed by Lilyan White Kent, and in the absence of such appointment, to her distributees. The trustees were authorized to invade and pay over to Mrs. Lamotte such part of the principal as they in their sole discretion deemed necessary to provide for her maintenance or in any other contingoncy.
The settlor died March, 1942, and Mrs. Lamotte was appointed successor trustee. An intermediate accounting has heretofore been had for this trust, covering the period from April 12, 1934 to March 19, 1942.
By trust indenture dated January 17, 1939, as amended March 1, 1940, separate trusts were created by the same settlor for Peggy Ann Kent Van Werth, his daughter by a prior marriage (hereinafter referred to as “Mrs. Van Werth”), and Mrs. Lamotte. He transferred certain life insurance policies on his own life, of which he was the owner and holder, to the trustees and designated them as the beneficiaries thereof. He reserved the right to change the beneficiary and also retained the right to sell, assign, hypothecate, surrender or borrow against them without the approval of the trustees, as well as the right to receive all payments, dividends, and surrender value as they accrued or became payable. The trusts were to be operative only with respect to the proceeds of the policy paid to the trustees in the event of his death after the deduction of all charges against the policy by way of advances, loans, or otherwise.
Paragraph fourteenth authorizes the settlor to amend, modify or revoke the trust in whole or in part at any time. *198 No fund was established to pay the premiums on the policies during the settlor’s life nor did he promise to keep them in force.
At the death of the settlor on March 19, 1942, and after receipt of the proceeds of the policy from the company, the trustees, pursuant to the terms of the trust, separated the proceeds, 40% thereof being used to create a life trust for Mrs. Van Werth and the remaining 60% of the proceeds was used to create a trust for Mrs. Lamotte.
The income from the trust as well as the principal thereof, if necessary, was to be used to pay an annuity to Mrs. Lamotte, and the income from the trust created for Mrs. Van Werth was to be paid over to her during her lifetime. Provision was made for the possibility that in the event neither survived the settlor for a disposition of the principal on the death of the life beneficiaries, the trusts were to terminate on the death of the life beneficiary. Mrs. Van Werth was given an unrestricted power of appointment, whereas Mrs. Lamotte’s power to appoint was limited. This is the first intermediate accounting for the trust covering the period from January 17, 1939 to October 30, 1956.
The respondent, Mrs. Van Werth, in her amended answer to the petition, does not question the accounts of the trustees’ proceeding, but does challenge the validity of the 1939 trusts as void in that (a) they constitute a testamentary disposition of property, and as not being executed in the manner prescribed for wills, and (b) they result in an improper suspension of the absolute power of alienation. She seeks revocation of the petitioner’s letters of trusteeship and requests that Mrs. Lamotte be required to account for all receipts and disbursements since March 19, 1942. With respect to the argument as to the agreement constituting a testamentary disposition, it is Mrs. Van Worth’s contention that no trust was created until after the death of the settlor in that no property of any kind established from the policies was transferred to the trustees; that the settlor retained such utter control that the trustees had no rights over them but a mere naked possession and a mere expectancy; that nothing could be done during the life of the settlor; and that the trustees were only agents. In the event that a trust is found to have been created, she contends that an unlawful suspension of alienation results from the fact that the first phase or life of the trust lasts from the date of its creation until the death of the settlor; that after his death, there is suspension during the lives of the wife and daughter, thus constituting three lives, as she argues that the entire *199 res must be considered as a whole and that the use of the same proceeds for a new trust is a new life suspension for more than the lives in being at the date of the trust agreement and is not saved by the creation of separate trusts.
In connection with the 1934 trust, Mrs. Van Werth denies that there were no issue of the- settlor, and in her counterclaim seeks a construction of the 1934 trust to the effect that she is among the class designated in said trust as “ the issue if any ” of the said Sidney E. Kent and that an order be made that upon the death of Mrs. Lamotte the corpus be paid to her. In her memorandum she not only seeks a construction of the 1934 trust but also challenges its validity on the ground that it was a testamentary disposition of the property not executed in compliance with section 21 of the Decedent Estate Law, although the latter issue was not raised in her pleading.
Eespondent contends she is an interested party on the accounting for the 1934 trust; that “issue” does not mean only the children of the marriage between the settlor and Mrs. Lamotte, but that the settlor meant issue of the parties of this marriage or any other marriage by settlor or Lilyan White Lamotte; that if it were the intent of the settlor to limit the use of the word “ issue ” only to the children of his marriage with Mrs. Lamotte, he would have expressly said so; that the settlor sought to protect his wife during her lifetime as against creditors, not to transfer control of the corpus to her, but intended rather to retain a right of reversion.
A reading of the 1934 trust instrument indicates that the respondent Mrs. Van Werth is not among the class designated as “ the issue, if any, of the said Sidney E. Kent and Lilyan WThite Kent ’ ’. That clause clearly indicates a reference only to the issue of the union of settlor and Mrs. Lamotte and of no other marriage. The court finds that respondent, Mrs. Van Werth, is not an interested party with respect to this trust.
Nor can we gather from a reading of this trust instrument anything other than a distribution by the settlor during his lifetime of all of his interest in the property in the event he predeceased his wife. There was here a full and formal distribution of the corpus during his lifetime disposing of the principal on several contingencies and with no right of reversion. The settlor intended to and did make an effective inter vivos disposition of all of his interest in the property. During his lifetime he gave the remainder to the appointees or distributees of Mrs. Lamotte. This disposition was subject to defeasance only in the event that Mrs. Lamotte died before him or in the *200 event there were issue of their marriage. While the trust was not to take effect until the death of the settlor, it did not constitute a testamentary disposition and was not required to be executed in the same manner as required for a will (Robb v. Washington & Jefferson Coll., 185 N. Y. 485).
The instrument before the court, executed in 1934, is by its terms clear and unambiguous and extrinsic evidence as to the settlor’s intent is inadmissible (9 Wigmore, Evidence [3d ed.], §§ 2425, 2427 and cases cited therein). The respondent’s tender of proof in connection with the claim that the 1934 trust is illusory is therefore rejected.
The 1939 trusts are not invalid by reason of the fact that the settlor-insured reserved the right to revoke the trusts in whole or in part and because the settlor-insured retained control of the insurance policies which constituted the sole assets of the trusts.
The insured could clearly assign the policies for a consideration or could choose various options for the distribution of the proceeds thereunder, and there is no reason why he could not enter into an agreement by the terms of which the beneficiary could undertake to hold and disburse the proceeds of the policy as directed by the insured. Such an agreement would not be testamentary in character although providing for distribution of the proceeds of the policies after his death. It certainly could not be maintained that the insurance contracts themselves are by reason of the foregoing testamentary in nature. The insured was only directing how the proceeds of the policies Avere to be distributed at his death and the conditions under which they would be taken. Under such circumstances, when Ave consider the nature of the property constituting the trust estate, it cannot be said that the plan of the insured constituted a testamentary disposition.
The trust took effect on delivery during the life of the settlor and rights thereunder then accrued but were merely postponed until after his death (Restatement, Trusts 2d, § 57, illus. 3 ; Personal Life Insurance Trusts in New York [Fraser], 16 Cornell L. Q. 19 ; Broga v. Rome Trust Co., 151 Misc. 641).
Nor can it be said that the 1939 trusts suspend the power of alienation for more than the permissible period. There was no suspension during the settlor’s life as he had reserved the right to revoke the trust and the period of suspension of alienation commenced at the death of the settlor and not upon the creation of the trust (City Bank Farmers Trust Co. v. Cannon, 291 N. Y. 125).
*201 Even if the settlor’s life were to be regarded as a measuring one, the creation of two separate trusts, one for Mrs. Lamotte and the other for Mrs. Van Werth, avoids an illegal suspension of alienation here. The creation of separate trusts in undivided interests is permissible. The settlor intended to and did create two separate trusts and under neither were there more than two measuring lives (Matter of Horner, 237 N. Y. 489).
The motion to settle the first intermediate account of the trustees of the 1939 trusts and the second account of the 1934 trust is granted. The counterclaims of the respondent with respect to the trust accounts are dismissed.