JAMES C. KERR

*vs.*

SAMUEL M. COUPER.

New Castle, Sept. T. 1883.

*Voluntary trust deed; annulment of.*

A voluntary trust deed containing no provision for revocation, executed by a young man, whereby he parted with all control over his real estate, on the trust that the trustee would pay over to him the rents

and profits, annulled and a reconveyance to the grantor directed,— it appearing that the grantor had executed the deed in ignorance of its effect, and its annulment being desired by the trustee as well. as by the grantor.

BILL FOR THE ANNULMENT OF A TRUST DEED.—The bill of complaint is founded upon the following statement of facts :

On the 21st day of June, 1877, the complainant, by deed, conveyed to the defendant, his maternal uncle and his heirs, all his lands which descended upon him as heir of his mother, and which were of the value of at least $25,000.

The deed was in trust, expressed therein as follows : " In trust, nevertheless, and for the uses following, that is to say : to pay over to the said James C. Kerr the clear income, rents and profits of the said real estate, lands, and tenements hereby conveyed during his natural life, and after his death to convey the said real estate, lands, and tenements to the heirs at law of the said James C. Kerr, free and discharged from the trust hereby created ; and upon the further trust, and the said Samuel M. Couper, trustee, his heirs and assigns, is hereby expressly empowered thereto, to sell and convey, free and discharged from this trust, the whole or any part of the real estate, lands and tenements hereby conveyed, where, in his discretion, such sale shall be for the best interest of the trust estate, and to invest and keep invested the proceeds of such sale in other real estate or in good bonds and mortgages, upon and for the same uses and trusts as the real estate so sold was held."

The deed of conveyance was wholly and purely voluntary. No money or other thing of value passed into the complainant's hands from the defendant, or any other person, as the consideration for the lands and tenements conveyed.

The complainant alleges in his bill that the deed was executed under circumstances which he states in paragraphs 4, 5 and 7 of his bill, which paragraphs are as follows :

" 4. Your orator further avers and shows to Your Honor that the said deed was executed by him under the following

circumstances : The mother of your orator died suddenly and unexpectedly at New Castle, the news whereof was sent by telegram to your orator in the City of New York, where he then resided. Her funeral occurred, according to the best of the remembrance and belief of your orator, on the 18th day of June, 1877, three days before the execution of the said deed. On the day succeeding the burial of his mother, your orator was informed that she had died intestate, whereby her real estate, being the one undivided fourth part of the lands and tenements hereinbefore mentioned, descended upon your orator as her only heir at law. Your orator was then about the age of twenty-four years, inexperienced and ignorant of business, and wholly unfit, without judicious advice and instruction, to undertake an act so important as the final disposition and disposal of his property, even if his mind had not been agitated and his judgment disturbed by the affliction which had been so recently visited upon him.

" 5. Your orator further shows to Your Honor that soon after the funeral of his mother, and, as your orator believes, on the day next after, he was approached by some of his relatives, but by whom so first spoken to, your orator does not remember and cannot distinctly set forth, and informed that in the event that your orator assumed control and management by himself of the estate to which he had thus become entitled, it would be injurious to the interest of your orator and the others who were equally concerned in the property ; to which your orator replied that it was not his desire to do anything against the interest of anyone or to disturb the existing state of the property as held in common ; and that your orator had entire confidence in his uncle Samuel, who had taken care of the interest of his mother ; whereupon, George Gray, Esq., was then sent for, and was told by some one of the family, and, as your orator believes, by Alexander Proudfit, in the presence of your orator and others of his relatives, that it was not desired by your orator to assume control of his property, and that his uncle Samuel would act as his trustee."

" 7. Your orator avers that he never saw the said deed until it was brought to him for execution ; that he had no benefit of advice or instruction from any person concerning its nature or effect, nor any knowledge or opportunity of consideration of its contents, other than consisted in the reading it by Mr. Gray, the solicitor of his uncle, sent for by him to prepare it ; and your orator avers and declares that he signed it in ignorance of the effect of its provisions, and especially in so far as it consisted in conveying an absolute and irrevocable trust estate, completely taking his property out of the control of your orator and subjecting it to the dominion and disposal of others, without possibility of interference on the part of your orator. That the provisions of the said conveyance and of the trusts thereby created were and are unwise and imprudent, and such as your orator would not have executed or authorized had he been apprised of and understood the act which he was induced to perform ; and your orator again avers that he was neither properly advised nor cautioned, but was influenced to execute the deed by the request of those whose views he adopted, to whose suggestions he yielded assent, toward whom he was naturally disposed to look for guidance, and to whose wishes—especially in the hour of his bereavement—he desired to conform."

" Your orator here expressly disclaims to Your Honor any imputation of improper motive on the part of his relatives, in deference to whose wishes he acted, either of fraud or intentional unfairness ; but, on the contrary, explicitly avers that in his belief they were animated by good motives; but, while thus disclaiming the existence of any improper design on their part, he, nevertheless, insists that a conveyance executed under such circumstances of ignorance, inexperience, excitement and mistake, without the benefit of independent advice or suggestion, and taking away from your orator all control over his property, ought not to stand. And your orator, among other defects and improprieties, shows to Your Honor that by its provisions he has no voice in the investments which the trustee is authorized to make ; that he has no con-

trol over the appointment of new trustees; that it gives him no power of appointment among children or others to whom, under the designation of heirs, the estate is finally limited, discharged of the trust; that he has no power of disposition by will; that he has no authority to make any provision for his wife; that he has no voice in any matters of sale, either as to the purchase or the quality of land so sold, or the amount of purchase money; and that it contains no power of revocation. And your orator again expressly avers that it never was his intention or purpose to convey his lands in such wise as that they should be placed beyond his power and control; but that, on the contrary, he understood the transaction to be a merely temporary and family arrangement, rendered desirable by the existing tenancy in common, and made for the purpose of keeping the estate together under the charge of his uncle Samuel, as his trustee and agent for its management, and enabling him to act according to exigencies for the advantage of your orator, as one of the cotenants; and your orator explicitly avers that, at the time of his execution of the deed aforesaid, he honestly and verily believed that he had the right and power at any time to revoke it and to annul the trust and authority given thereby, and that if he had been properly instructed and had understood its operation and effect, he never would have executed it."

The defendant, in his answer, admits the statements of the complainant as to the circumstances under which he executed the deed as contained in paragraphs 4, 5 and 7 of the bill; and says that "In advising the execution of the said deed, and in accepting the onerous trusts therein created, he was actuated solely by motives of goodwill toward the said complainant, and especially by the desire to preserve the estate of the said complainant from the vicissitudes of fortune to which the then business of said complainant exposed it; and he submits himself in all things to the judgment of this court.

*N. B. Smithers* for the complainant.

*George Gray* for the defendant.

THE CHANCELLOR.— Under the circumstances disclosed by the bill and answer, what should the decree of this court be?

It is manifest, from the reading of the bill and answer, that both the complainant and the defendant coincide in the same opinion and desire that the conveyance aforesaid be annulled and canceled.

Considering the circumstances under which the conveyance was made, and the ignorance as to the effect thereof by the complainant, I think that the wishes of the parties thereto should prevail, and that there should be a reconveyance of the estate conveyed by the trustee to the complainant; and so I decree.

Let a decree be drawn accordingly.