COMMISSIONER OF INTERNAL REVENUE v. BACHER.

No. 7710.

Circuit Court of Appeals, Sixth Circuit.

March 13, 1939.

Newton K. Fox, Sp. Asst. to Atty. Gen., of Washington, D. C. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Lucius A. Buck, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

W. H. Annat, of Cleveland, Ohio (Cannon, Spieth, Taggart, Spring & Annat and W. H. Annat, all of Cleveland, Ohio, on the brief), for respondent.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Petition of the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals reversing his action in assessing deficiencies in income taxes against respondent in the amount of $2012 for 1931 and in the amount of $2098.19 for 1932. The case turned on the right of the respondent to· deduct losses in connection with the sale of certain stocks he had previously conveyed to a Trustee. On May 15, 1930, the respondent entered into a trust agreement with the Guardian Trust Company of Cleveland, Ohio (herein called the Trustee), whereby he transferred to it in trust certain property, the income from which it agreed to distribute "in quarterly installments to the donor's wife, Jule E. Bacher".

Section I of the agreement vested in the Trustee "full power and authority" with certain limitations not material here "to manage, control, sell, invest and reinvest the property of the Trustee". This section concluded,—"before taking any such action * * * the Trustee shall first consult with and secure the approval of the donor so long as he lives".

Section III provided for the termination of the trust (1) if the donor should

die; or (2) if his wife should die, "be divorced from the donor" or "for any reason whatsoever" should "cease to live with the donor as his wife". Upon the happening of the first contingency the section provided that the entire trust estate should pass "to the executors, administrators, successors and assigns of the donor"; and upon the happening of the second, that the entire trust estate together with any accumulations should "be distributed to the donor to be his absolutely."

Section IV provided that additional property might be brought under the terms of the agreement by conveying same to the Trustee and annexing a description thereof to the agreement.

Section VI entitled "Irrevocability of Trust" provided in part "This trust shall be irrevocable except that the donor upon giving sixty (60) days' written notice to the Trustee, may revoke the same and withdraw from the operation of this agreement all or any part of said subject matter at the expiration of five (5) years from the date hereof. * * *"

Included in the inventory of the property conveyed to the Trustee was an item of 1000 shares of the stock of the Humble Oil and Refining Company which respondent testified he had acquired between August, 1925, and May, 1927, at an average cost of $51.96 per share.

On October 30, 1930, respondent deposited in the trust 500 shares of the common stock of the U. S. Steel Corporation which he had purchased four days before at $150¼ per share, or at a total of $75,796.69, with interest and the transfer fee.

On December 24, 1931, the Trustee permitted respondent to withdraw 350 shares of Steel stock from the trust after the presentation to it of a release signed by the beneficiary, and after the execution of a receipt therefor by both the beneficiary and respondent. Both these instruments are copied in the margin.[1]

On December 24, 1931, the respondent sold the 350 shares of Steel stock through E. A. Pierce & Company for $13,139.75 and used most of the proceeds to pay for stock of the American Telephone & Telegraph Company which he had bought the preceding day and which he deposited in the trust. In his return for 1931 he claimed a loss of $39,117.04 upon this transaction. The Commissioner however ruled that the withdrawal of the 350 shares was not a bona fide transaction, that the stock remained trust property, and that the loss was actually sustained by an irrevocable trust of which respondent's wife was the beneficiary, and assessed a deficiency of $2012 against respondent for 1931.

In 1932, by means of similar releases by the beneficiary and similar receipts of the beneficiary and respondent, a total of 300 shares of the Humble stock was withdrawn from the trust in two transactions, one in February and the other in March, and sold by respondent for an approximate total of $13,850 which was deposited in the trust account. Similarly, 150 more shares of the Steel stock were withdrawn on November 26th and sold by respondent for $4926.30, the disposition of which was unaccounted for in the evidence. The three sales represented a total claimed loss to respondent for 1932 of $19,377.20 which the Commissioner likewise disallowed.

The ledger sheets of the Trustee for U. S. Steel show that the trust acquired 200 shares of the common stock of U. S. Steel on April 8, 1932, 100 shares on May 6, 1932, 100 shares on June 10, 1932, and 100 shares on December 29, 1932, so that at the end of the year its holdings in U. S. Steel common were 500 shares, the same number held by it in October, 1930. According to the ledger, 400 of these shares were bought either directly by Bacher or by his instructions. The cash disbursements column of the Principal Ledger of the trust shows that these acquisitions were paid out of funds of the trust, and by December 29,

---

[1] "I, Jule E. Bacher, beneficiary under the Trust Agreement between R. L. Bacher with The Guardian Trust Company, dated May 15, 1930, hereby agree that R. L. Bacher, Donor under said Trust Agreement, shall have the right at this time to withdraw from the operation of the Trust three hundred and fifty (350) shares of the capital stock of the United States Steel Corporation. Jule E. Bacher."

"The Guardian Trust Company,
"Cleveland, O. 12/21/31
"This will acknowledge that THE GUARDIAN TRUST CO. Trustee, under Trust Agreement, has at my request delivered to me securities as follows: 350 shares U. S. Steel Co. com. By reason whereof, I hereby release said Trustee from all further liability in respect to said securities.
"R. L. Bacher—Jule E. Bacher."

1932, the uninvested balance in the trust had been reduced to a nominal sum.

Bacher testified: "* * * I had no arrangement with the trust or with Mrs. Bacher that I would either pay to her or to the trust the proceeds from the sale of the certificates of stock that I withdrew from the operation of the trust. At the time Mrs. Bacher signed the authorization and release for the release of the securities, I did not say anything to her about giving the money to her or turning it back into the trust. I had no such arrangement or understanding with the Guardian Trust Company. * * *"

Mrs. Bacher testified: "* * * At the time Mr. Bacher was creating the trust * * * he did not tell me any more about it except that he was forming a trust. He asked me to sign the papers authorizing the release from that trust of stocks and I signed them when he asked me to. * * * Mr. Bacher did not say anything to me about putting the money back into the trust fund from the sale of the securities. There was never any agreement about that. * * * I didn't know what was in the trust in the first place. I didn't know anything more about it than that I got the income. Mr. Bacher did not discuss the trust or any of its transactions with me. He just asked me to sign these papers and I signed them at his request. I got so much allowance out of the income from the trust every month."

The Board of Tax Appeals ruled that the sales were made by the respondent and that he sustained the losses claimed in both years. The Commissioner claims that upon the facts stated the law is with him and that tested by the realities of the transactions rather than by their form, the sales were made for and on behalf of the trust and that respondent did not sustain deductible losses.

The applicable statute is Sec. 23(e) of the Revenue Act of 1928, Ch. 852, 45 Stat. 791, 799, 26 U.S.C. § 23(e), 26 U.S.C.A. § 23(e):

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise——.

"(1) if incurred in trade or business; * * *

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

"(3) * * *."

The respondent as donor and Mrs. Bacher, the sole beneficiary, could by mutual consent terminate or modify the trust (Helvering v. Helmholz, 296 U.S. 93, 97, 56 S.Ct. 68, 80 L.Ed. 76; Restatement of the Law of Trusts, Secs. 337, 338), and we see no escape from the conclusion that the releases and the withdrawal receipts did effect a termination of it as to the securities involved. These securities then became the property of the respondent, the original owner, with an unclouded right to sell them. So far the sales were exactly what they appeared to be. Respondent did not earmark the particular shares of stock sold, he reserved no right to repurchase them, and in fact, never repurchased them. Nothing else appearing, he may not be criticized for claiming deductible losses upon the sales. Commr. v. Behan, 2 Cir., 90 F.2d 609, 611; Chisholm v. Commr., 2 Cir., 79 F.2d 14, 101 A.L.R. 200.

Petitioner insists that because respondent deposited the American Telephone & Telegraph Company stock and some of the proceeds from the sales of the Steel stock and other and different shares of the Steel stock in the trust this constituted him a constructive trustee for the trust with the result that the sales were by the trust and not by him personally. But this does violence to the evidence and the fact findings of the Board. Respondent had the right to use the proceeds of the sales as he saw fit. He was not obligated to deposit them directly or indirectly in the trust or to bring additional property within its terms but he had the privilege of doing so under Sec. 4 and the natural and reasonable conclusion is that he simply exercised this privilege.

Petitioner urges that in any event the deductions claimed were for losses not sustained in transactions entered into for profit and were therefore not allowable under Sec. 23(e) (2). Petitioner would limit respondent's dealings with the shares sold to the period elapsing from the time he withdrew them from the trust until he sold them. We think that this view is too narrow. It does not accord with the prior views of the Commissioner (I.T. 1994, Cum.Bull. No. III-1, 46; Cum.Bull. XIV-1, 201, 202) or with the conclusion reached by the Board in Pierre S. DuPont v. Com'r,

18 B.T.A. 1028, or in R. W. Hale v. Com'r, 32 B.T.A. 356, affirmed in Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819. We concur in the view of the Board that respondent's transactions in the shares commenced with their original purchase by him and closed with their sale.

The decision of the Board of Tax Appeals is affirmed.