COMMISSIONER OF INTERNAL REVENUE v. JOHNSTON.

No. 7994.

Circuit Court of Appeals, Sixth Circuit.

Dec. 8, 1939.

884

Joseph M. Jones, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

C. Frederic Stanton, of Detroit, Mich., for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Petition of the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals reversing his action in assessing a deficiency in income taxes against respondent in the amount of $5,951.39 for 1932. The case turns on the right of respondent to deduct losses in connection with the sale of certain securities.

The basic facts are undisputed. As found by the Board they are as follows:

In July, 1929, respondent created a trust for the benefit of his wife and deposited securities therein costing $109,366.25. The trust was revocable on fourteen months' notice. Respondent's wife died in 1931. On July 3, 1931, respondent served notice of his intention to revoke; and some time thereafter he determined to give the securities to his sister, Carrie J. Law. He discussed the matter with the officials of the bank, acting as trustee, and was advised, that most of the securities had decreased in value, that it would be advantageous to him to sell them, make a gift of the proceeds and take a deduction of the loss on his tax return. Being further ad-vised that this procedure was proper, respondent determined to pursue it.

On September 9, 1932, the trust was formally revoked and the trustee thereupon assigned the securities to respondent and was released. Respondent authorized the trust company to sell all the securities except one item of one hundred shares. On September 28 the securities were regularly sold through a broker at the market price, at a net loss of $43,876.07. The proceeds of $65,490.18 were deposited on September 29 in a joint account of respondent and his sister.

After determining to give his sister the proceeds of the sale, respondent discussed with her and the bankers what securities it would be advisable for her to purchase and place in a trust she was expecting to create. It was determined that certain securities sold by respondent should not be repurchased and· that others should be purchased in lieu thereof.

On September 26, 1932, the sister created the trust to hold the securities to be acquired and such other property as might be placed therein. She named herself as beneficiary during her life; and certain others, thereafter.

On September 28, 1932, the sister placed an order to buy the securities agreed upon and therewith listed, which with the exception of certain bonds aggregating $6,000.00 face value, were the same in name and number as those sold by respondent. They were bought by the brokers on that day at market and were paid for by the sister with her check on the joint account in the amount of $65,855.94. The difference between the sum received by respondent on the sale of securities and that paid out by his sister came from respondent's funds.

Further undisputed facts are—that the trust instrument created by the sister named her as grantor, and respondent and a trust company, as co-trustees; and provided that the trust could be revoked by the sister only with the consent of respondent and that if he should die prior to revocation, the trust became irrevocable. The trustees were to pay the net income to the sister during her life, and could, with the consent of respondent, pay to her certain parts of the principal. Upon the death of the sister, the entire net income and such principal as he should request, were payable to respondent during his lifetime. Upon the death of the sur-

vivor of respondent and his sister, the remainder of the trust property was to be conveyed to others. Respondent was vested during his life with the power to vote all stocks in the trust and no sale or other disposition of any of the trust property could be made without his consent and the trustees were required to obtain his consent before making investments of the trust fund.

The Board found that respondent had made a bona fide sale of the securities on which a loss was sustained, giving rise to a legal deduction; that he subsequently made a valid gift of the proceeds to his sister and that she purchased securities with this money and placed them in the trust formed by her.

Petitioner challenges this finding upon the ground that the transactions in controversy, taken as a whole, represented a "wash sale" as contemplated by the Revenue Act of 1932, Chapter 209, Sec. 118, 47 Stat. 169, 26 U.S.C.A. § 118. But this does violence to the findings of the Board upon facts which reasonably support them. See Dulin v. Com'r, 6 Cir., 70 F.2d 828. Respondent did not reacquire by purchase or otherwise the securities which he had sold. Such of the securities as were identical with those sold were acquired by his sister in a bona fide purchase.

The "wash sale" proposition aside, petitioner's further contention is that the various transactions, taken altogether, did not represent a bona fide sale of securities by respondent, but were conceived and carried through for the purpose of reducing his income tax. Unless the evidence shows that the findings of the Board to the contrary were clearly erroneous (Tracy v. Com'r, 6 Cir., 53 F.2d 575; Marshall v. Com'r, 6 Cir., 57 F.2d 633) we are bound by its decision. It is undisputed that the trust of July, 1929, was properly revoked and that respondent became the sole owner of the securities. He had an unconditional right to sell them, he did sell them, and the sale was exactly what it appeared to be. Com'r v. Bacher, 6 Cir., 102 F.2d 500, 502; Com'r v. Behan, 2 Cir., 90 F.2d 609. Nothing else appearing, he was entitled, therefore, to claim a deductible loss. There was nothing "unlawful or even mildly unethical" in respondent's effort to reduce his taxes. Marshall v. Com'r, supra; Madeira v. Com'r, 3 Cir., 98 F.2d 556. He had a right to give the proceeds of the sale to his sister and there was noth-

ing, per se, suspicious or unnatural in connection with such a gift. Bardach v. Com'r, 6 Cir., 90 F.2d 323, 326. Nor is there anything questionable touching the circumstance that respondent advised his sister as to the securities to be purchased for the trust created by her or that she constituted respondent one of the trustees, with powers and limitations, as above set forth. These are not unusual transactions as between blood relations.

We think that the evidence taken as a whole fails to clearly refute or to negative the findings of the Board and that we are therefore bound by them. The result is that its decision is affirmed.