**SAYERS v. BAKER.**

No. 2347.

Court of Civil Appeals of Texas. Eastland.

April 23, 1943.

Rehearing Denied May 21, 1943.

548

Rawlings, Sayers & Scurlock, of Fort Worth, for appellant.

Croom & Croom, of Houston, and W. O. Gross, of Mineral Wells, for appellee.

LESLIE, Chief Justice.

Sam R. Sayers, Trustee, instituted this suit against Earl M. Baker to recover $3,131.70 claimed to be due Miss Myla Baker, the beneficiary under the terms of a trust agreement. The defendant answered that he paid said sum direct to T. B. Baker, a brother of Myla Baker, and that such payments were made in various amounts at different times, but in each instance at the direction and with the authority of Myla Baker, who was at all times sui juris and entirely competent.

The trial before the court without a jury resulted in a judgment that plaintiff take nothing, and he appeals.

In substance the facts are as follows:

Earl M. Baker, Myla Baker and T. B. Baker were parties to the trust agreement, and on Myla's complaint to the Trustee that the amounts paid by Earl M. Baker to T. B. Baker were improperly charged to her account under the trust, said Trustee

instituted this suit to judicially determine whether the defendant, Earl M. Baker, is in default under the terms of the trust agreement.

On or about December 10, 1938, the trust agreement in question was executed, by the terms of which Earl M. Baker was to pay $9,000 per year for the sole use and benefit of his aunt, Miss Myla Baker, during her life time, and upon her death to his Uncle, T. B. Baker, if living, until his death, which obligation was secured by the transfer to Sam R. Sayers and Frank Canaday, Trustees, of 64,000 shares of the common stock known as non-par of Resort Hotel Company, a Texas corporation, which owns and operates the Baker Hotel in Mineral Wells, Texas. Earl M. Baker "had the right and option but not the legal duty or obligation to pay said $9000.00 annually from any other source or income and thereby avoid default." The stock and dividends and respective rights of Myla Baker and T. B. Baker were "never to be transferred, assigned, or otherwise hypothecated by them or either of them * * *."

Contemporaneously with the execution of said trust agreement, at the request of Sam R. Sayers, attorney for Myla Baker and T. B. Baker, a letter was written by Earl M. Baker directed to Miss Myla Baker, beneficiary, and Mr. T. B. Baker as her successor in trust, authorizing the withdrawal of $750 per month by the beneficiary direct, beginning February 1, 1939, in lieu of the $9,000 lump sum payment provided for in the trust agreement to be made to the Trustee at the end of each year. This letter, which was executed and delivered at the same time of the execution and delivery of the trust agreement, expressly authorized the payment of $750 per month by Earl M. Baker direct to the beneficiary, Myla Baker, and, upon her death, to T. B. Baker, if living.

This trust agreement and letter given in connection therewith were a part and parcel of a transaction between Earl M. Baker and T. B. Baker and Myla Baker, which was concluded on or about December 10, 1938, by the execution and delivery of sixteen written instruments by and between the parties. Some of these instruments were deeds, and others were contracts and reciprocal releases—all executed at the same time in the presence of the attorneys for all parties.

The trust agreement, by virtue of said letter, became operative as to the payment of $750 per month on February 1, 1939. At this time Myla Baker was living at the Baker Hotel in Mineral Wells, Texas, where the agreement provided Earl M. Baker should furnish her an "apartment, living accommodations, etc.", and it was more convenient for her to be paid through the Baker Hotel than any other manner. Accordingly Earl M. Baker notified Louis Gambrell, Auditor of the Baker Hotel in Mineral Wells, to pay the $750 per month in accordance with said letter and to charge his account.

Myla Baker and T. B. Baker, with the consent of Myla Baker (as found by the trial court and approved by this court), began drawing excess of $750 per month in substantially equal shares, the first withdrawal being on February 10, 1939, in the sum of $1,000 by T. B. Baker through Myla Baker. This sum was sent at the request of Myla Baker to T. B. Baker, who was then in Mexico. Through February, March and April, 1939, T. B. Baker made six withdrawals, aggregating $1,483.90 under said trust agreement with the authority and approval of Myla Baker.

Between January 31st and April 30th, Myla Baker made eleven different withdrawals of money, aggregating $2,202.70 under said trust agreement through the Baker Hotel in Mineral Wells, Texas. Consequently, on April 30, 1939, Myla Baker and T. B. Baker, with the consent of Myla Baker, had withdrawn under said trust agreement through the Baker Hotel a sum of money considerably in excess of the allotted $750 per month, but not in excess of $9,000 per year.

In May, 1939, T. B. Baker requested Gambrell, Auditor of the Baker Hotel, permission to make an additional withdrawal. He was informed by the Auditor that the trust account had been overdrawn, since an allowance of only $750 per month was authorized. Thereupon the Auditor refused to allow T. B. Baker to draw any additional amount and reported the matter to Earl M. Baker. The Auditor's attitude in the matter "up set" Myla and T. B. Baker, and Myla reported Gambrell's action to Earl M. Baker. The conversation and negotiations that followed between the parties resulted in Earl M. Baker informing Myla Baker that it would be alright for her and T. B. Baker to go ahead and draw in excess of $750 per month, provided they did not withdraw more than $9,000 in any one year under the trust

agreement. Earl M. Baker communicated this arrangement to Auditor Gambrell in the presence of Myla Baker. T. B. Baker was in the hotel at the same time.

Thereafter, Myla Baker and T. B. Baker continued to withdraw through the Baker Hotel in Mineral Wells, Texas, under said trust agreement sums in excess of $750 per month. Finally, about July 1, 1939, T. B. Baker, who was then in Mineral Wells, called Louis Gambrell to the apartment of Myla Baker in said hotel, and at that point Myla and T. B. Baker, in the presence of each other, requested the Auditor to prepare for them a statement of all withdrawals they had made up to that time under said trust agreement. Such statement was made and delivered to each of them. The only objections made to the statement by either Myla or T. B. Baker was to a $1,000 charge made for payment of fee to Sylvan Lang and an item to a Dr. St. Clair for eye glasses.

In August, 1939, Auditor Gambrell was requested by Myla Baker to render an additional statement of said account, which he delivered to her. No objections were made to said statements, except the one concerning the $1,000 fee to Lang and the charge for glasses, both of which items were eliminated from said account.

Upon a full hearing of the testimony, the trial court rendered judgment in favor of appellee, Earl M. Baker, and on request of appellant filed findings of fact and conclusions of law which were not excepted to. Neither did the appellant request additional findings nor complain of insufficiency in the findings.

The trial court's conclusions of law were, in part as follows: "I conclude as a matter of law that said trust agreement, being created for the benefit of Myla Baker, as beneficiary, and T. B. Baker, as residuary beneficiary, by Earl M. Baker, settlor, and all parties being sui juris and mentally competent to contract, that such payments aggregating $3,131.70 to T. B. Baker by Earl M. Baker, under the direction, authority and approval of Myla Baker constituted a legal payment under the terms of said trust agreement as originally made and as modified by the interested parties thereto."

The appellant contends that the trial court erred in holding: (1) That the interested parties were competent to modify the terms of the trust agreement, and (2) that the beneficiary, Myla Baker, had the authority under the agreement to assign or deliver to her brother, T. B. Baker, any part of the income received by her annually from the trust.

As to these points we find the trial court has found upon sufficient testimony that Earl M. Baker under the direction, authority and approval of Myla Baker paid to T. B. Baker the sum of $3,131.70 and charged the same to her trust account. Under the court's findings and the undisputed facts, Myla Baker had the right and authority to receive during any given year said trust fund of $9,000, or any part thereof, and to direct Earl M. Baker to pay the same or any balance thereof to T. B. Baker, or to whomsoever she wished. This whole law suit proceeds on the theory that Myla Baker and Earl M. Baker were sui juris and competent to contract and transact business generally, and the trial court so finds from an abundance of testimony. Within the terms of the trust and not to exceed $9,000 per year, the trust agreement set up no authority or agent to control or supervise her right to spend or otherwise dispose of said funds derived annually from the trust.

█ It follows that we are of the opinion and so hold that the agreement by Earl M. Baker to permit Myla Baker to withdraw more than $750 per month under the circumstances was within the express terms of the trust agreement and was not a modification thereof requiring the consent of Myla Baker or T. B. Baker. That is, the trust agreement empowered Earl M. Baker during a given year to pay the $9,000 to the beneficiary or her order.

█ However, if Earl M. Baker's permission to Myla Baker to withdraw more than $750 per month be regarded as a modification of the original trust agreement, then Earl M. Baker and Myla Baker were at such time the only parties at interest in such modification and they alone could by mutual agreement change, modify or alter the same. As to T. B. Baker, his interest at such time was only that of a contingent beneficiary and his interest could not possibly vest until the death of Myla Baker, and then only if he were living. In no way did Earl M. Baker's permission for Myla Baker to withdraw the annual trust fund or order a part thereof paid to T. B. Baker alter or adversely affect such contingent rights of T. B. Baker.

The pleadings of both litigants recognize Myla Baker as the sole beneficiary with present interest under the trust agreement and there are no allegations in appellant's pleadings concerning want of consent, or the necessity of consent on the part of T. B. Baker to any modification of the trust agreement.

■ Further, if it be held that Earl M. Baker's permission to Myla Baker to withdraw funds in excess of $750 in any way worked a modification of the original trust, then it must be held under the undisputed testimony that T. B. Baker brought about the situation making it necessary to pay more than $750 per month, and he, T. B. Baker, received the benefits of the altered agreement and he (by authority of Myla Baker) continued to draw money under said trust agreement after Earl M. Baker had agreed that he and Myla Baker could withdraw in excess of $750, so long as the aggregate withdrawal in any one year did not exceed $9,000.

It conclusively appears that if T. B. Baker had not made any withdrawal prior to May 1, 1939, there would have been no necessity for said modification, if any, of the trust agreement, because the personal withdrawals by Myra Baker were within the $750 per month limit. Hence, it is clear that T. B. Baker not only agreed to said modification, if his consent was in any respect required, but he brought about the necessity for such modification and reaped the exclusive benefits thereunder. The trial court correctly found that no one was interested in said trust estates except Earl M. Baker, the settlor, Myla Baker, the beneficiary, and T. B. Baker, the residuary beneficiary, if living on the death of Myla Baker.

■ The appellant's alleged theory that a spendthrift trust cannot be modified, changed or revoked, even by agreement of all parties, is not a sound one, and the proposition and authorities cited by him in support thereof are not applicable to the facts of this case. Those authorities are based on facts showing the change or modification of the trust was sought to be made after the death of the settlor, whereas in the instant case the interested parties are alive, sui juris and in agreement.

Further, appellant in his brief concedes "The general rule is that where a valid and effective voluntary trust has been created, and where no power of revocation has been reserved, it cannot be revoked by the creator without the consent of the beneficiaries thereunder"—citing in support thereof Monday v. Vance, 92 Tex. 428, 49 S.W. 516, and annotations in 38 A.L.R. 941, and 91 A.L.R. 103.

■ Obviously this trust agreement was subject to change, modification or revocation by consent of the interested parties. The proposition based on like facts is extensively briefed under annotations, 38 A. L.R. 941 et seq. and such annotations are supplemented in 91 A.L.R. 102.

Supporting the construction herein given the trust agreement and as an authority setting forth the right to terminate or modify such trust, "where all the beneficiaries of a trust consent and none of them is under an incapacity", we cite Scott on Trusts, Vol. 3, page 1856, Sec. 338, et seq. At page 1860 of that text the author states the rule with reference to modification as follows: "Similarly, the terms of the trust may be modified if the settlor and all of the beneficiaries so desire. Since they have the power to terminate the trust, they have the power after terminating it to create a new trust. It is not necessary, however, to terminate the trust first and have the property conveyed to them by the trustee and then reconveyed to the trustee upon a new trust. They can in a single transaction direct the trustee to hold the property upon the modified terms. It has been so held in the absence of statute." Citing Ludlow's Trustee v. Ludlow, 249 Ky. 396, 60 S.W.2d 965.

Other pertinent authorities taken from the text are: Dunnett v. First National Bank & Trust Co., 184 Okl. 82, 85 P.2d 281, and Commissioner of Internal Revenue v. Bacher, 6 Cir., 1939, 102 F.2d 500.

See, also, Johns v. Birmingham Trust & Sav. Co., 205 Ala. 535, 88 So. 835; Kerr v. Couper, 5 Del. Ch. 507; Burton v. Boren, 308 Ill. 440, 139 N.E. 868; Swift v. Craighead, N.J.Ch., 70 A. 666.

■ Under the subject of "Modification of Trusts", 65 C.J. page 340, states the following principles:

(a) "As in the case of contracts, the trust agreement may be modified by consent of all the parties in interest." (Citing cases.)

(b) "After an express trust has been perfectly and completely created, and the rights of the beneficiary have thus become vested, in the absence of a power of modi-

fication reserved, the trust may not be changed, altered, or modified by the settlor without the consent of the beneficiaries." (Citing many cases.)

(c) "The consent of some of the beneficiaries to a change or modification of a trust does not affect the status of the other beneficiaries who do not consent." (Citing cases.)

The application of the foregoing principles to the facts of this case inevitably leads to the conclusions entertained and expressed by the trial court and approved by this court.

■ Further, and in answer to a contention suggested by appellant, we are of the opinion that Earl M. Baker had the right under the trust agreement to pay said amount to the beneficiary or her order out of resources or income available to him, other than dividends derived from the Hotel shares. He did not have to wait until the end of the year to make the payment, not did he have to make the payments direct to the trustees. If it had been contemplated that such payments had to be made by Earl M. Baker to the trustees, the following provisions of the trust would have no meaning:

Subdivision III reads: "Provided, further, that I (referring to Earl M. Baker) have the right and option but not the legal obligation or duty to pay said $9000.00 annually from any other resources or income and thereby avoid a default."

Subdivision IV, in part, provides: "The payment of any and all sums of money required or permitted hereunder shall be payable at the Baker Hotel in Mineral Wells, Texas."

Subdivision V provides:

"If at the end of any year during the life of this trust, the sum of $9000.00 has not been paid to beneficiaries from either of the sources above mentioned, it shall be the duty of the Trustees, or either of them, to advertise said stock for sale and sell the same for cash to the highest bidder in the following manner:

"When the beneficiary herein entitled to receive said $9000.00 shall notify both of the Trustees in writing that the whole or any part of said $9000.00 has not been paid for any year * * * said trustees, or either of them, shall proceed to give notice and sell said stock," etc.

Obviously, if the trustees were the only ones who could receive the payment from Earl M. Baker and then pass it on to the beneficiary, they (trustees) would know, without having to be notified by the beneficiary, just how much had been paid and how much was in default. Evidently such payments made from "either source" meant payments made to the beneficiary from stock dividends or paid to the beneficiary from other resources or income by Earl M. Baker.

■ "Subdivision IV", stipulating that the sums of money paid Myla Baker "shall be payable at the Baker Hotel in Mineral Wells, Texas", is also significant as showing that Earl M. Baker made the payments according to the plan of the agreement. To so pay her at the Baker Hotel was a matter of convenience to the interested parties, and especially Myla Baker, who, under the agreement, held an apartment and accommodations at that place.

What has been said disposes of Points One and Two adversely to the appellant. Points Three and Four, respectively, raise questions of sufficiency of the testimony and the existence of any testimony to support certain conclusions of fact found by the trial court. The evidence relating thereto has been examined and deemed sufficient in such respects to support the judgment. Points Three and Four are likewise overruled.

For the reasons assigned, the judgment of the trial court is affirmed.