**BURRAGE v. HASSETT, Collector of Internal Revenue.**

**No. 2334.**

District Court, D. Massachusetts.

Nov. 20, 1944.

George R. Blodgett, Herrick, Smith, Donald, Farley & Ketchum, Kenneth W. Bergen, and Phillips Ketchum, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., and Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, and Fred J. Neuland, Sp. Assts. to the Atty. Gen., for defendant.

WYZANSKI, District Judge.

This case presents a single issue: Under Sec. 113 (a) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 1682, 26 U.S.C.A. Int.Rev.Acts, page 859, is the basis for determining the taxpayer's loss upon the sale of securities (a) the original cost of those securities to her when she purchased them at various dates prior to December 18, 1931, or (b) the fair market value of those securities when she reacquired them from the Alice Hathaway Burrage trust on May 3, 1933? That issue turns on whether the controlling statutory provision is (a) the general rule laid down by Sec. 113 (a) that, except in cases governed by special rules, "the basis of property shall be the cost of such property" or (b) the special rule laid down by Sec. 113 (a) (2) that "if the property was *acquired by gift* after December 31, 1920, the basis shall be the same as it would be in the hands of the donor * * * except that for the purpose of determining loss the basis shall be the basis so determined or the fair market value of the property at the time of the gift, whichever is lower." (Italics supplied.)

Prior to December 18, 1931, the taxpayer had bought common stocks at different dates and prices adequately described in the stipulation. For purposes of illustration it will be sufficient to mention one purchase: 100 shares of United Fruit Company at $9,120. December 18, 1931, she transferred without consideration all those securities to the "Alice Hathaway Burrage Trust of December 18, 1931" which was created on the same day by an agreement between the taxpayer (therein called "The Donor") and her son Albert C. Burrage, Jr., her son, Russell Burrage, and her daughter Elizabeth A. Chalifoux. The agreement of trust named those three children trustees and provided in Article VI that "The Trustees * * * may * * * appoint Alice Hathaway Burrage to be an additional co-trustee" and that if any trustee other than Mrs. Burrage "shall cease to be a Trustee * * * the vacancy so created shall be filled according to the written nomination of the person so ceasing to be trustee." The trust made various provisions, not now material, for the distribution of income and of principal to various beneficiaries including the original trustees but not including the taxpayer. But the trust, in article II, also provided that: "From time to time and at any time during the lifetime of the Donor and upon her written request, any two of the Trustees (but not including the Donor, if she is at the time a Trustee) may determine in their absolute and uncontrolled discretion to distribute and pay over to the Donor, any part or all of the then principal of this Trust, and the distribution and payment to the Donor so determined upon shall thereupon be made. To the extent of any distribution and payment thus determined upon and made this Trust

shall terminate. The Trustees may act, but shall not be bound so to act, upon the request of the Donor for any such distribution."

December 18, 1931, the original trustees appointed the taxpayer a cotrustee. On April 12, 1933, and May 1, 1933, respectively, Russell Burrage and Albert C. Burrage, Jr., resigned as trustees, and were succeeded at that time by Montgomery Reed and Madelaine G. Rogers, who with the taxpayer and Elizabeth A. Chalifoux continued to be the trustees until the trust's termination. At the time of their appointment and while acting as trustees, Mr. Reed and Miss Rogers were, respectively, an attorney and a bookkeeper regularly employed by the taxpayer in her business office. Neither one was a beneficiary of the trust.

May 3, 1933, pursuant to article II of the agreement, quoted above, and at the written request of the taxpayer, Mr. Reed and Mrs. Chalifoux determined to and did pay over to the taxpayer without consideration the entire corpus of the trust, including many, if not all, of the securities acquired by the trust at its inception. On that day the market value of the stock taken for illustration, that is, 100 shares of United Fruit Co., was less than $6,835.88.

In 1936 and 1937 the taxpayer sold a number of the securities reacquired from the trust at prices lower than she had bought them prior to December 18, 1931, but higher than the market value on May 3, 1933. Thus, in 1936 she sold the 100 shares of United Fruit Co. for $6,835.88.

In her federal income tax returns for 1936 and 1937 the taxpayer, relying on the first clause of Sec. 113 (a) of the Revenue Act of 1936, claimed deductible losses computed upon the basis of the cost of those securities prior to 1931. Using that computation, she made from her gross income deductions calculated in accordance with the percentage formulae for capital gains and losses set forth in Sec. 117 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 1691, 26 U.S.C.A. Int.Rev.Acts, page 873. In the case of the 100 shares of United Fruit stock, which she treated as having been held for more than 5 years but not more than 10 years, and therefore subject to being taken into account to the extent of 40%, she showed a cost of $9,120, a gross sales price of $6,835.88, a loss of $2,284.14, and a deductible loss of $913.66.

The Commissioner claimed that that method of the taxpayer was erroneous, and that she should have made her computations in accordance with Sec. 113 (a) (2) of the Revenue Act of 1936. In his view she on May 3, 1933, "acquired by gift" these securities. Since on that day these securities had a market value lower than they had when sold in 1936 and 1937, the Commissioner contended she sustained no deductible loss. Thus, for example, in the Commissioner's view, since 100 shares of United Fruit had on May 3, 1933, a market value of less than $6,835.88, Mrs. Burrage sustained no loss when in 1936 she sold those shares for $6,835.88.

There followed assessment by the Commissioner, payment to the Collector by the taxpayer of the asserted deficiency, claim by the taxpayer for a refund, rejection of the claim by the Commissioner, and finally this suit.

The narrow point at issue is whether Mrs. Burrage on May 3, 1933, "acquired by gift" the securities, such as the 100 shares of United Fruit Co., which on that day were transferred to her by the trust.

The Collector's argument seems to be this. In 1931 when Mrs. Burrage created the trust she, according to the Collector's view, divested herself of all interest in the securities. She thus lost the right to use the cost of the securities as a basis for computing tax losses. In 1933 when the trustees transferred the securities out of trust to her, that transfer was a gift to her. A transfer by any trustee to Mrs. Burrage would be a gift by a trustee to Mrs. Burrage. But in this case the gift is even clearer because of the surrounding circumstances. Here the original trustees were beneficiaries of the trust. Their economic interest was so to say adverse to Mrs. Burrage. When two of these original trustee-beneficiaries (in a series of transactions so nearly contemporaneous and so obviously interrelated that they must be viewed as one plan) nominated as their successor two of Mrs. Burrage's employees and one of those nominees and one of the original trustee-beneficiaries made the transfer of the securities to Mrs. Burrage, in effect this constituted a gift by all the original trustee-beneficiaries to Mrs. Burrage.

The argument is unsound. It is, of course, true that in 1931 Mrs. Burrage divested herself of title to the securities; and that in 1933 the trustees transferred the securities out of trust to her. But it is not true that in 1931 she divested herself of all interest in the securities—she retained the

right to request the return of those securities and the right to have the trustees determine whether to grant her request. And it is not true that when in 1933 the trustees made a transfer to her they were making a gift.

It was not a gift by Mr. Reed (who with Mrs. Chalifoux executed the transfer), because he did not dispose of property which was in any way his. What he and Mrs. Chalifoux did was to exercise a power in trust which Mrs. Burrage had established under the 1931 declaration of trust. By virtue of authority conferred on them by Mrs. Burrage in 1931, they in 1933 transferred to Mrs. Burrage a beneficial interest created by her. Such an action was no more a gift to Mrs. Burrage by Mr. Reed than if A had transferred a horse to B to hold with the power to transfer that horse to A or C, and B transferred it back to A. In both the hypothetical case and the case at bar, the trustee was vested with the choice whether to make the gift to an outsider effective or not, and the trustee chose not to make the gift but to hand back the property.

Nor was it a gift by Mrs. Chalifoux or her brothers all of whom were the original trustee-beneficiaries. For present purposes we may assume that the resignations of the two brothers as trustees, their nominations of successors of doubtful independence, and the action of one of the successors and of Mrs. Chalifoux in transferring the securities to Mrs. Burrage were part of one plan and ought to be so regarded for tax purposes under the doctrine of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. But that assumption serves to establish not that there was a gift by the three children of Mrs. Burrage but that there was a rejection of a gift. If A had transferred a horse to B to hold with the power to transfer that horse either to B and his son or to A, and B transferred the horse back to A, there would have been no gift to A. In both the hypothetical case and the case at bar the settlor of the trust gave the trustee an option to give or not to give and the trustee exercised it in favor of not giving. In neither case was there an outright gift from one person to another followed some time later by a gift back from the original donee to the original donor. In both cases the original owner kept a string on his property and no one else ever could claim outright ownership.

My conclusion is that, as in Matter of Martha S. Stern, 39 B.T.A. 501, 506, this is not a case where the taxpayer "acquired by gift" the property involved in the dispute. Compare Commissioner of Internal Revenue v. Bacher, 6 Cir., 102 F.2d 500. Since there was no acquisition by gift, Sec. 113 (a) (2) has no application to the case at bar. This leaves the case squarely within the general rule of the first clause of Sec. 113 (a).

This conclusion is quite consistent with the policy as well as the letter of the income tax laws. Under this decision it is not possible for two taxpayers to claim the same loss, and it does not appear possible for anyone to use Mrs. Burrage's procedure for the purpose of evading or avoiding the normal incidence of taxation. Moreover, this decision allows Mrs. Burrage to consider in her tax accounting the loss which from an economic viewpoint she sustained.

The parties are directed to prepare computations and a form of judgment in accord with this opinion.