JOHN H. BROWN ET AL.

*vs.*

THE FIDELITY TRUST COMPANY, TRUSTEE, ET AL.

*Testamentary capacity: deeds of trust; presumption; reservation of right to revoke; effect of—.*

The mental capacity which a testator, or grantor in a deed in the nature of a will, must have in order to make a valid will or deed, must consist in his possessing, at the time of making the will or deed, a full understanding of the nature of the business in which he is engaged; a recollection of the property which he intends to dispose of, and the person to whom he means to give it, and an understanding of the manner in which he in fact disposes of it, and of the relative claims of the different persons who are, or should be, the objects of his bounty.

p. 181

If a person has capacity enough to make an ordinary deed or contract, he has capacity enough to make a valid will, and the burden of proof is upon those who allege his want of capacity to prove it.  p. 181

The mere fact that a grantor in a deed was erratic and eccentric, and at times may have entertained certain delusions was: *Held,* not to be sufficient to affect the validity of the deed, where

it was not shown that the deed was the result of such peculiarities and delusions.                                    p. 182

Where a deed of trust declares, in detail, the method and conditions by which revocation can be made, it can be revoked in no other way.                                    p. 183

*Decided May 12th, 1915.*

Appeal from the Circuit Court of Baltimore City. (DAW-KINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James W. Denny,* for the appellants.

*Richard M. Duvall* and *Charles F. Stein* (with whom were *Edward Guest Gibson,* for the Church Home; *Duvall and Baldwin,* for the Home of the Aged *et al.; J. Milton Lyell,* for the Baltimore Baptist Church Extension Society, on the brief), for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The bill of complaint in this case was filed on the 20th day of April, 1914, in the Circuit Court of Baltimore City, by the appellants against the appellees, to vacate and set aside a deed of trust, dated the 18th day of October, 1911, from Martha E. Brown of Baltimore City to the Fidelity Trust Company, a body corporate, as trustee, the grantee in the deed.

The grantor died on the 3rd of April, 1914, intestate and without children but leaving one sister and a number of nephews and nieces, children of deceased brothers and sisters, as her next of kin and heirs at law.

She was about seventy-two years of age, at the time of her death, and had been married to John H. Brown, one of the appellants, her surviving husband, about fifteen years.

The bill is filed by the husband in his own right and as administrator of his wife's estate, by a surviving sister and by certain nephews and nieces of the intestate.

The defendants, are the Fidelity Trust Compaany, trustee, the grantee in the deed, and the beneficiaries named in the deed of trust.

The deed is assailed upon several grounds and it is contended upon the part of the plaintiffs, that it should be declared void and set aside for the following reasons:

First—Because the grantor was at the time of its execution and for several years prior thereto mentally incapable of executing a valid deed or contract.

Second—Because the deed was revoked in writing on the 2nd day of April, 1912, in the lifetime of the grantor.

Third—Because it is a testamentary instrument and inoperative as a deed.

Fourth—That the deed is void because in fraud of the rights of the husband, and a fraudulent attempt to defeat the legal rights of the husband, under the statute, in her personal estate, to evade the testamentary laws of the State, and an attempt to defeat the Collateral Inheritance tax provided by law.

The property here involved and conveyed by the deed consists of stock and bond securities and cash money, amounting to about $33,550, and was to be held in trust for the uses and purposes and with the powers, set out in the deed.

By the deed, the property named therein, is conveyed and assigned to the Fidelity Trust Company, its successors and assigns, to be held in trust, for certain purposes, stated in

the deed, and with the following powers, to wit: "To collect the income or interest arising therefrom and from any other securities or property into which the same may be converted, and after the payment of all the expenses and costs incident to the administration and preservation of said trust estate, to pay over the entire net income to Martha E. Brown, for and during the term of her natural life, in such amounts and as she may request from time to time. All undisbursed income in the hands of the trustee at the time of her death shall be added to and become a part of the corpus of the trust estate created. And from and immediately after her death the trustee shall pay out of the corpus of the trust estate, free and discharged from the trust the sum of one hundred dollars ($100) to the executor or administrator of her estate, for her funeral expenses and for the purpose of having her name engraved upon her tombstone immediately after her death, without, however, any responsibility on the part of the trustee of seeing to the application of the money."

Then after providing for several small specific legacies, the deed provides, that the trustee shall continue to hold in trust all the rest, residue and remainder of the trust estate for and during the life of John Hebb Brown, her husband, and shall pay over out of the net income therefrom the sum of fifty dollars ($50) a month to him, accounting from the date of her death, for and during the term of his natural life. And from and immediately after his death the trustee shall continue to hold in trust the trust estate, for and during the lives of Mrs. Cinderilla Walter, of Baltimore, a sister, and Charles Lynch, of Baltimore, a brother, and of the survivor of them, the trustee shall pay over out of the net income arising from the trust estate the sum of fifty dollars ($50) a month to Cinderilla Walter so long as she shall live, and shall pay over out of the net income arising from the trust estate the sum of fifty dollars ($50) a month to Charles Lynch so long as he shall live. And upon and after the death of these the trustee is to pay over, transfer and assign clear and discharged from any trust, the *corpus* of the trust

estate and the accrued income thereon, to certain persons and corporations named in the deed, as follows: The sum of fifty dollars ($50) to Mrs. Ella Butler, of Baltimore City, a friend; the sum of one hundred dollars ($100) to Charles Jones, of Baltimore City, a nephew; the sum of one thousand dollars ($1,000) to the Baltimore Baptist Church Extension Society; the sum of one thousand dollars to the Baltimore City Missionary and Church Extension Society of the Methodist Episcopal Church ($1,000); the sum of one thousand dollars ($1,000) to the Home for the Aged of the Methodist Episcopal Church of Baltimore City, and to the Church Home and Infirmary of the City of Baltimore the entire balance and residue of the trust estate and property.

It further appears, by the terms of the deed, that the trustee is given full power and authority to sell any of the investments held by it from time to time, without application to or order of any Court, and without any responsibility on the part of the purchaser or purchasers to see to the application or re-investment of the purchase money; and to invest the proceeds of sale as often and whenever in its judgment it is beneficial to the trust estate to do so, and is also given full power and authority to invest in such stocks, securities and properties as it may consider safe and proper, without application to or order of any Court, to be held by it with all the powers and duties given to it by the deed of trust, with regard to the securities and cash granted and assigned.

The grantor by the deed of trust reserved the right to revoke it at any time upon giving the trustee thirty (30) days' written notice of her intention to revoke, and by executing at the office of the trustee in the City of Baltimore, under her hand and seal, attested by an officer of the trustee, and acknowledged before a notary public, a written revocation of the deed of trust, and delivering to the trustee a receipt for the trust property returned to her.

We have thus set out somewhat at length the terms and provisions of the deed because, we think, the reasonable character of the provisions of the deed itself, will reflect upon

a proper conclusion, in the discussion and determination of the questions, in the case.

The first and main contention, on the part of the plaintiffs, who are seeking to vacate and set aside the deed here in controversy relates to the mental capacity of the grantor, at the time of the execution of the deed, that is, whether she possessed sufficient mental capacity, and was competent, at the time, to execute a valid deed or contract.

The mental capacity which a testator or a grantor in a deed of this character, is required to possess in order to make a valid will or deed, has repeatedly been defined and announced by this Court.

· In *Davis* v. *Denny,* 94 Md. 392, it is said the decisions in this Court upon this subject have uniformly held, with slightly varying forms of expression, that such capacity consists in the possession by the testator at the time of making his will of a full understanding of the nature of the business in which he is engaged; a recollection of the property of which he intends to dispose and the persons to whom he means to give it; and also an understanding of the manner in which he in fact disposes of it, and of the relative claims of the different persons who are or should be the objects of his bounty. *Davis* v. *Calvert,* 5 G. & J. 301; *Colvin* v. *Warford,* 20 Md. 367, 388; *Higgins* v. *Carlton,* 28 Md. 125; *McElwee* v. *Ferguson,* 43 Md. 479; *Brown* v. *Ward,* 53 Md. 382.

This brings us to the facts of the case upon which the plaintiffs rely to impeach the mental capacity of the grantor and to have the deed of trust annulled and vacated.

At the trial of the case, the plaintiffs produced and examined over thirty-one witnesses and the defendants five.

The record contains nearly four hunderd pages of printed matter, consisting of former deeds, a large number of letters and a large mass of testimony. We shall, however, only refer here to those portions of the testimony bearing upon the question of the grantor's mental capacity, at the time of

the execution of the deed, and especially that part of it which directly reflects upon her capacity to make a valid deed or contract.

It was said in the case of *Berry* v. *Safe Deposit Co.,* 96 Md. 48, in dealing with the degree of mental capacity which the law requires to make a will, that it was not a question of sanity or insanity, but if the person has capacity enough to make a valid deed of conveyance or an ordinary contract, then he has capacity enough to make a valid will, and the burden of proof is upon those who allege its non-existence, to establish a want of capacity on the part of the testator or grantor.

In the present case, the deed of trust was prepared by Mr. F. Howard Warfield, one of the officers of the Fidelity Trust Company, at the request of the grantor, who desired to make changes in a then existing deed, dated the 18th of October, 1910. He testified that she came to his office on October 18th, 1911, read the new deed of trust which he had prepared according to her directions; executed the revocation and release of the deed of October 18th, 1910, and then executed the new deed here in controversy. Upon the question of her mental condition at this time, as compared with the time when she had executed previous deeds to the same company, he testified: "Different in no respect from what it had been previous to that time at the interviews I had with her. I would say that on all the occasions when I talked with Mrs. Brown, from the time I first saw her on September 14, 1909, until the last time I saw her, that on all of those occasions she was perfectly clear; she showed clear insight into her business matters and any particular business that might have been under special discussion, and while she wanted to take up matters before it was really necessary to do so, as in the case of the Henry Brown mortgage, asking me to look into that and see what was necessary some six or seven months before the mortgage actually did fall due; at the same time that, to my mind, was simply an anxiety on

her part not to let the time go past when the transaction should be fixed. As I say, on all of these occasions she was clear, she showed exact knowledge of what her matters were that she discussed with me, and always knew what she wanted to do and why she wanted to do it."

The Rev. Dr. McDowell, who first saw the grantor in 1909, and as late as 1912, and had a number of interviews with her, testified that she knew exactly what she wanted to do and why she wanted to do it in her interviews with him. He testified: "I wish my determinations were always as clear and positive as hers were about the disposition of this money; perfectly clear and positive about it."

The testimony of Dr. Charles G. Hill, a witness on behalf of the defendants, is substantially to the effect, that the grantor on the 18th of October, 1911, was competent to make a valid deed or contract, and that the various acts and conduct, testified to by the plaintiff's witnesses, were not such as would affect her capacity to make a valid deed or contract.

While there is evidence that the grantor in this deed was erratic and eccentric and at times entertained certain delusions as to persons and things, the evidence, we think, fails to show that the deed was the result of these peculiarities or delusions.

In *Gesell* v. *Baugher*, 100 Md. 678, it is said: "The existence of a delusion in the mind of a testator, even at the time of making his will, as to particular persons or things, does not invalidate the will unless it is the product of the delusion."

The property conveyed by the deed was owned by her before her marriage to her second husband (Mr. Brown), and the provisions of the deeds executed by her to the Trust Company in 1909 and 1910 are substantially, with slight changes, the same as the deed executed by her in 1911, the one here in question.

The proof shows, we think, that the deed was her free and voluntary act, and that she understood its contents; that she possessed sufficient capacity to dispose of her property with judgment and understanding, both as to the amount involved and the relative claims of the persons who were or should have been the objects of her bounty, and this brings it within the rules and requirements to constitute it a valid deed and contract.

The second objection, that the deed was revoked by the grantor in her lifetime, is free from difficulty. The letter relied upon to effect a revocation is dated the 2nd of April, 1912, addressed to Mr. F. H. Warfield, and is in part as follows: "If I am living and well I will be at your office when the time is up. I will take my money out of the Fidelity Trust Company. If I let it stay in the Trust Company I will have a deed made to suit myself, not others."

This letter, it will be seen, is dated April 2nd, 1912, and the grantor lived two years thereafter, and treated the deed as in full force and effect by receiving the income from the trust property up to the time of her death, on April 3rd, 1914.

Besides this, by the terms of the deed it could only be revoked by the method provided by the deed itself, and that was by giving the trustee thereunder thirty (30) days' written notice of her intention to revoke said deed, and by executing at the office of said trustee, in the City of Baltimore, under name and seal, attested by an officer of said trustee, and acknowledged before a notary public, a written revocation of said deed of trust, and delivering to said trustee a receipt for the trust property returned to her.

The third objection, that the deed is void because testamentary in character, is answered by the case of *Brown* v. *The Mercantile Trust Company,* 87 Md. 397, and the cases there cited.

In *Brown's case, supra,* the Court held a somewhat similar deed to this not to be of a testamentary character, and said:

"The declaration of trust (deed) sets forth that the stocks, bonds and securities had passed out of the possession of the grantor and had been delivered to the company. The transaction was therefore complete and all present interest had become vested in the trustee."

In the present case the bonds and cash, it will be seen, passed to the Fidelity Trust Company, its successor and assigns, upon the execution of the deed, upon the trusts named therein, and the interest became vested in the trustee, under the authorities cited.

What we have said in discussing the previous objections applies with equal force and disposes of the plaintiffs' fourth contention.

The deed from the grantor to the Trust Company was a complete and *bona fide* transfer of the property to the trustee for the purposes named therein. Mrs. Brown had an undoubted right and power to dispose of her personal property in her lifetime as she deemed wise and best, and there is nothing in the record to show that the deed was in any way in fraud of the legal rights of her husband who survived her. *Code,* Art. 93, sections 4 and 317; *Grabill* v. *Plummer,* 95 Md. 56; *Safe Dep. Co.* v. *Gittings,* 103 Md. 496.

In *Hays* v. *Henry,* 1 Md. Chan. 339, it is said: "That if the act (of alienation) be accompanied with the delivery of the property, and everything is done (so far as it can be) before the husband's death intestate, to give effect to the transaction, and there is no reservation, and the husband divests himself of all interest in the property, then the act will be necessarily valid, as a due exercise of his admitted right whilst life remained to dispose of his property."

In *Dunnock* v. *Dunnock,* 3 Md. Chan. 146, the Court said: "Though a husband can not by will deprive his wife of her reasonable share of his personal estate, yet he has the power to dispose of this description of property during his life, by sale, or by gift, and if he thinks proper gratuitously to part with his personal property in his lifetime, reserving no right

to himself, though the transfer was made to defeat the claims of his wife, it will prevail against her.

"But if the conveyance or transfer be a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during life, seeks at his death to deny his widow that share of his personal estate which the law would assign to her, it will be ineffectual against her.

"To hold that either a husband or wife has a vested interest in the other's personalty that the one is unable to divest in his or her lifetime, would be disastrous in the extreme to trade and commerce. Owing to commercial necessities, personalty must be left free for exchange, and to be so someone must be vested with full power to sell and transfer it free from any latent or contingent claims."

We, therefore, hold upon the proof disclosed by the record in this case that Mrs. Brown, the grantor in this deed, was on the 18th of October, 1911, competent to make a valid deed or contract, and the decree of the Court below, so holding, will be affirmed.

In view of the conclusion we have reached, the rulings of the Court upon the exceptions to testimony become immaterial, and need not be passed upon.

For the reasons stated the decree will be affirmed.

*Decree affirmed, the costs in this Court to be paid by the appellants.*