## 17141

PEOPLES NATIONAL BANK OF GREENVILLE, South Carolina, Trustee, Respondent, v. T. K. PEDEN *ET AL.*, of whom M. M. Guest and Ora Mae Hollingsworth are Appellants.

(92 S. E. (2d) 163)

*Messrs. P. Bradley Morrah, Jr.* and *Frank G. Carpenter,* of Greenville, *for Appellants, W. M. Guest* and *Ora Mae Hollingsworth,*

*Messrs. J. A. Henry,* of Greenville, *for Defendant-Respondent, Mrs. Pearl Richardson,* and *Wyche, Burgess & Wyche,* of Greenville, *for Defendants-Respondents, T. K. Peden, Individually and as Executor and Trustee: T. K. Peden, Jr., William Elliott Peden* and *Raymond Thomas Peden,*

*Leatherwood, Walker, Todd & Mann,* of Greenville, *for Plaintiff-Respondent.*

April 4, 1956.

Moss, Justice.

On February 23, 1953, Bessie B. Mahaffey executed an *inter vivos* trust indenture in favor of the Peoples National Bank of Greenville, South Carolina, as trustee. Simultaneously therewith she transferred to the trustee certain cash and securities of considerable value. On the same day, Bessie B. Mahaffey also executed in favor of the trustee her warranty deed conveying certain real estate to be held pursuant to the terms of the trust indenture. This deed was duly recorded in the proper office of Greenville County.

The trust indenture, in paragraph 4 thereof, contained the following reservation:

"The Grantor hereby reserves unto herself the right and power at any time, and from time to time, during her life, by any instrument executed and probated in the form required by the law of this State for recording a conveyance of real property, to revoke, in whole or in part, this trust indenture or to alter or amend any of the terms and provisions thereof. Upon the elapse of sixty (60) days from delivery to the Trustee by the Grantor of such deed or other instrument this trust indenture shall be deemed to have been revoked, altered, or amended in the manner or to the extent therein set forth."

On November 6, 1953 Bessie B. Mahaffey executed a written instrument entitled "Revocation of Trust" in proper form for recordation, which said instrument was delivered to the trustee on November 7, 1953, and on said date receipt thereof was acknowledged by the trustee. The said instrument was in form as follows:

"Now, Therefore, I, Bessie B. Mahaffey, do hereby revoke the said deed hereinabove referred to and all estates and trusts created therein, and I direct and require the Peoples National Bank of Greenville, South Carolina, Trustee, immediately upon receipt of notice of this revocation to convey and return to me all of the original trust fund, cash, notes, bonds, mortgages and other securities and all investments or reinvestments of same or of the income or proceeds thereof together with all income derived from said trust fund or in-

vestment or reinvestment thereof not heretofore legally disbursed by the Peoples National Bank of Greenville, South Carolina, as Trustee."

Bessie B. Mahaffey died on December 16, 1953, some forty days after she had given the trustee notice of revocation of the trust instrument, but twenty days prior to the expiration of the sixty-day period specified in the trust indenture.

This action was instituted in the Court of Common Pleas for Greenville County by the respondent for the purpose of determining the validity and effect of the revocation of the said trust indenture, and seeking instructions with reference to the disposition to be made of the corpus of the trust. In this action there were joined all beneficiaries under the trust indenture and all legatees under a subsequent will of Bessie B. Mahaffey, and all unknown persons claiming any interest in her estate. The appellants, W. M. Guest and Ora Mae Hollingsworth, challenged the efficacy of the revocation.

This issue, along with other issues with which we are not here concerned, was heard by the Trial Judge and on September 16, 1955 he rendered a decree, wherein he held that both the trust indenture and the trust deed were effectively revoked by Bessie B. Mahaffey by the instrument dated November 6, 1953. The appellants come to this court seeking to reverse the decree of the Trial Judge and the exceptions raise two questions. (1) Was the revocation of November 6, 1953 in accordance with the powers of revocation reserved in the trust indenture and deed; and (2) Did the revocation revoke the trust indenture and trust deed or only the trust deed?

By reference to paragraph 4 of the trust indenture above set out, the settlor specifically reserved the right and power to revoke, in whole or in part, at any time during her lifetime the trust indenture which she had executed. The revocation clause specified that in order to effectuate such it had to be by a written instrument, executed and probated in the form required by law for recording a conveyance of real

property and delivery of such revocation to the trustee. It is agreed in the statement taken from the transcript of record that "the grantor executed a written instrument in proper form to entitle the same to recordation, purporting to revoke the Trust Indenture."

In numerous cases it has been held that the right of the creator of a trust to revoke same is recognized where the deed contains an express provision permissive of revocation. *Downs v. Security Trust Co.,* 175 Ky. 789, 194 S. W. 1041; *Carter v. Hough,* 86 Va. 668, 10 S. E. 1063; *McEvoy v. Boston Five Cents Savings Bank,* 201 Mass. 50, 87 N. E. 465.

If a particular mode of revocation is specified in a deed of trust, it is essential that the mode specified should be followed in order to make the revocation effective. *Downs v. Security Trust Co., supra; Brown v. Fidelity Trust Co.,* 126 Md. 175, 94 A. 523.

In the case of *Broga v. Rome Trust Co.,* 151 Misc. 641, 272 N. Y. S. 101, 106, the court said:

"A revocable trust may be revoked in any manner which shows a clear and definite purpose on the part of the settlor of the trust to revoke the same, unless the instrument itself prescribed the manner in which the trust may be revoked, in which event the trust becomes irrevocable, excepting as it be revoked in the manner prescribed in the trust instrument."

In 54 Am. Jur., Trusts, Sec. 77, is found a clear statement of the general rule:

"While, without question, the settlor of a trust may revoke the trust where power of revocation is validly reserved, if a particular mode of revocation is specified, it is essential that the mode specified be strictly followed in order to make the revocation effective. Where the right to revoke is reserved and no particular mode is specified, any mode sufficiently manifesting an intention of the trustor to revoke is effective. Revocation may be effected by a devise of the corpus of the trust by a will if duly executed. Whether a will

impliedly revokes a revocable trust is a question of intention."

Also in 4 Bogert on Trusts and Trustees, Sec. 996:

"A power to revoke or alter a trust must be executed in accordance with its terms. If it is a power to revoke by deed, it cannot be exercised by an undelivered deed; if a power to revoke by deed witnessed, neither an assignment nor a will are sufficient; if the instrument provides for revocation by deed, there is clearly no power to destroy the trust by will; if the power is to cancel the trust by will, a deed will have no effect; if by written notice to the trustee, a return of the trust instrument by the trustee to the settlor at the latter's request will not revoke; if by two settlors acting jointly, one alone cannot revoke; if by the settlor and trustee, the former cannot act alone; if by the joint action of the trustee and the cestui, the cestui is powerless to revoke by his several acts."

It is apparent that under the rules above announced that Bessie B. Mahaffey, the settlor of the trust, had the power to revoke the trust that she had created, the power so to do had been specifically reserved in the trust indenture. She exercisd it in accordance with the provisions of such and effectively revoked the trust indenture and the deed conveying the real estate, which was to be held pursuant to the terms of the trust indenture.

The appellants assert that the revocation had to take effect during the lifetime of the settlor. It should be here observed that the trust indenture did not require that the settlor be living at the time the revocation of the trust became effective and complete. A more logical explanation of the expression "during her life", as contained in paragraph 4, is that the settlor could not revoke the trust indenture by a will. It had to be revoked fully in the manner provided during the lifetime of the settlor. The appellants rely upon and cite the case of *In re Reese's Estate,* 317 Pa. 473, 177 A. 792, 793, where it was provided "that the (settlor) may alter, amend or revoke this agreement or withdraw from

the principal fund from time to time, by giving sixty days prior notice in writing to said trustee." The settlor notified the trustee in writing of her desire to change the terms of the trust, the language of which instrument is as follows:

"This notice is given in accordance with the terms of paragraph 6 of the said Trust Agreement and shall only be effective in the event that the said notice has been given to the Norristown-Penn. Trust Company at least sixty days preceding the date of my decease, otherwise to remain in full force and effect.' "

The settlor died a few days prior to the date of the expiration period and the court, in holding the revocation ineffective, said:

"It is clear beyond peradventure that the trust is an active one, in which the ultimate distributees have an immediate interest, and is irrevocable, on the part of the settlor, except as specified in the agreement itself. * * * the * * * inchoate revocation, which was given *less than 'sixty days preceding the date of (the settlor's) decease,'* was, by its own terms, as well as by the terms of the agreement, ineffective, and the original trust agreement remained in full force and effect." (Emphasis added.)

This case sustains the respondent's position because the revocation clause of the trust under consideration provided that the notice had to be given at least sixty days preceding the date of the settlor's death. However, this provision is absent from the trust here considered.

In the case of *Hackley Union National Bank v. Farmer,* 252 Mich. 674, 234 N. W. 135, 136, the revocation clause there under consideration stated the trust instrument "may be revoked by donor at any time during his life" by instrument signed and acknowledged by the donor and delivered to the trustee. The settlor signed and acknowledged an instrument purporting to be a revocation of trust and mailed such to the trustee with a letter from the donor that he had revoked the trust in its entirety. These papers were not re-

ceived by the trustee until after the donor's death. The question arose as to whether or not the revocation met the requirements of the powers reserved in the trust agreement. The court held that it did and that the trust was revoked. It was pointed out that the revocation was not attempted by will but by an instrument executed in conformity with the requirements of the trust agreement and was an *inter vivos* act. In the case before this court the revocation was in conformity with the reserved power and the revocation was executed and delivered *inter vivos*. It required the trustee to redeliver immediately the trust property to the settlor. However, the trustee had sixty days from the receipt of the notice in which to make such re-delivery.

After the settlor had given the proper notice to the trustee of the revocation of the trust, there was nothing further required to be done on her part. She had exercised every right within her power to completely revoke the trust. The provision for the elapse of sixty days from the delivery of the notice before the trust indenture would have been declared to have been revoked was for the benefit of the trustee. It was designed to give the trustee time within which to prepare its accounting, and to redeliver all of the corpus of the trust. It should here be observed also that the trust indenture nowhere provides that the settlor should live for a sixty-day period after the giving of the notice, in order for the trust to be revoked.

In the case of *St. Louis Union Trust Co. v. Dudley,* Mo. App., 162 S. W. (2d) 290, 293, the court in discussing the provision for notice to the trustee held that it was for the sole benefit of such trustee. The court said:

"In saying this we are not unmindful of the general rule that where the settlor of a trust has reserved the right to revoke the trust in a particular manner as by a notice in writing delivered to the trustee, he can ordinarily revoke it only by adherence to the mode prescribed. *However, such provision for written notice* to trustee, being solely designed for the trustee's benefit, may be waived by him (at least in the

absence of a dishonest or improper motive), and when so voluntarily waived, a valid revocation is no less effectively accomplished than if written notice had been given in strict compliance with the letter of the instrument. *Miller v. Exchange National Bank of Tulsa,* 183 Okl. 114, 80 P. (2d) 209."

In this case the trust was effected and brought into being by two separate instruments: The instrument entitled trust indenture, conveying certain personal assets, and a trust deed of even date therewith, conveying the real estate. The trust deed did not set out in full all of the terms of the trust indenture but it did provide that the real estate should be held, managed and disposed of in accordance with the powers and duties set forth in the trust indenture. The two documents above referred to were executed and delivered simultaneously but the clause providing for revocation was contained in the trust indenture and not in the trust deed, and even though the instrument entitled "Revocation of Trust" refers to the trust deed and the place of its record, of necessity it had to have reference to the trust indenture. This instrument provides for a revocation of the deed and all estates and trusts created therein and it requires the trustee to return to the settlor all of the original trust funds, cash, notes, bonds, and mortgages and other securities. We can only conclude that it was the intention of the settlor, by the revocation instrument, to revoke both the trust indenture and the trust deed.

We conclude that the Trial Judge correctly decided the issues raised in this case. The exceptions to his decree are overruled and the judgment below affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.