203 So.2d 57 (1967)
Stewart MACFARLANE, Individually and As Co-Executor of the Last Will and Testament of James Macfarlane, Deceased, James Macfarlane and Janet Macfarlane Semple, Appellants,
v.
The FIRST NATIONAL BANK OF MIAMI, As Trustee et al., Appellees.
No. 67-92.
District Court of Appeal of Florida. Third District.
October 3, 1967.
Rehearing Denied November 6, 1967.
*58 Sibley, Giblin, Levenson & Ward, Miami Beach, Kurtz & Cooper, Miami, for appellants.
Shutts & Bowen and Cotten Howell, Scott, McCarthy, Steel, Hector & Davis, Miami, for appellees.
Before CHARLES CARROLL, C.J., and PEARSON and SWANN, JJ.
PEARSON, Judge.
The appellants are a co-executor and the beneficiaries under the last Will of James Macfarlane, deceased. As plaintiffs in the circuit court they sought a declaration that assets held by the First National Bank, as Trustee, were assets of the estate. The defendants in the circuit court, and appellees here, are the Bank, a co-executor of the same Will and individuals who are the ultimate beneficiaries of a revocable trust established by James Macfarlane, deceased. The issue tried was whether the trust had been revoked by James Macfarlane prior to his death.
The trial judge made findings as follows:
"The pertinent provision of the Revocable Trust provides: `Provided always, nevertheless, that it shall be lawful for James Macfarlane, the grantor, at anytime during his natural life, by any deed or writing under his hand and seal, duly attested by two subscribing witnesses, or by his last will and testament or other writing in nature thereof, duly attested by two subscribing witnesses, to alter, change, revoke, make null and void, the said use and uses, estate and estates, hereby limited or created, * * *' The documents entitled Revocation of Trust and Consent of Beneficiaries were not delivered to the Trustee during the life of James Macfarlane. The primary issues for determination are whether the two documents were effective to revoke the Trust, and whether the Last Will and Testament of James Macfarlane revoked the Trust.
"Upon consideration of the pleadings and evidence and all of the proceedings, the Court makes the following findings of fact and conclusions of law:
"1. The method of revocation specified in the Revocable Trust was not compiled with and the Trust was not revoked.
"2. The Last Will and Testament of James Macfarlane did not revoke the Trust.
"3. Plaintiffs claim that delivery of the documents entitled Revocation of Trust and Consent of Beneficiaries was not necessary because of alleged acts of Jessie D. Macfarlane, a wife of James Macfarlane. This issue was tried over objections of some of the Defendants, and the Court finds against the Plaintiffs on this issue, and finds the evidence was insufficient to support Plaintiffs' claim. Moreover, a trust officer of the Trustee conferred with James *59 Macfarlane on occasions subsequent to May 11, 1958, and the Trustee sent statements of the trust account to James Macfarlane from time to time, therefore, he had full knowledge that the said Revocable Trust was not revoked." [Emphasis supplied]
On this appeal the appellants have argued two points. The first maintains that the trial judge misapprehended the legal effect of the evidence and thereby erred in finding that the revocation of trust executed by James Macfarlane was not delivered. The second maintains that as a matter of law, the document entitled revocation of trust was not required to be delivered by the trust agreement and that therefore the trial judge erred in finding as a matter of law that the method of revocation specified in the revocable trust was not complied with and that the trust was not revoked. We proceed here with a discussion of appellants' second point and inasmuch as we reach a holding that the decree was erroneous as a matter of law, we do not proceed further.
The probative or evidentiary facts are not in substantial conflict. It is the conclusions of fact or ultimate facts which present conflict. On October 4, 1956, James Macfarlane executed a revocable trust designating The First National Bank of Miami as trustee. He was at that time a man of some 80 years of age and his wife was only a few years younger. The trustee has administered the trust continuously from October, 1956. Under the terms of the trust, the grantor deposited with the Bank, securities of the approximate value of $400,000. The trust provided that if his wife, Jessie Macfarlane, survived the grantor, she was given a life interest and power to dispose of the trust by will. If she failed to exercise the power then the trust property was to be paid to nieces and nephews of Jessie Macfarlane.
Mrs. Macfarlane survived Mr. Macfarlane, but she did not exercise the power during her lifetime. Thus, if the trust was revoked, the trust property would pass under the will of James Macfarlane. If not revoked, it would pass under the trust agreement. A will subsequently probated gives one-half of his estate to his children by a prior marriage. The complaint which gave rise to this litigation sought a declaratory decree determining the rights of the parties.
During 1958, there was some discussion and communication about Mr. Macfarlane wanting to revoke the trust. In January Mr. Henry Kurtz, a Miami attorney, was employed by Mr. Macfarlane to prepare a revocation of trust instrument. It was prepared and forwarded to Mr. Macfarlane. Mrs. Jessie Macfarlane, wife of the settlor, came to Miami from their home in Havana, Cuba to discuss the matter with attorney Henry Kurtz and the trustee. During the visit she sought to enlist the Bank's help to dissuade Mr. Macfarlane from terminating the trust. Subsequently, Mrs. Macfarlane advised Mr. Kurtz that Mr. Macfarlane had changed his mind and had decided for the present not to disturb the trust.
On March 5, 1958, Mr. Macfarlane addressed a letter to the trustee which stated: "* * * please sell all the securities you are holding in my name or in the name of Jessie D. Macfarlane, at the price you paid for them or at higher price if possible." The letter was received by the trustee on March 13, 1958, after which Mr. Swenson, one of the officers of the trustee, called Mr. Macfarlane by phone and made an appointment to discuss the matter in person. On March 28, 1958, Mr. Swenson talked with Mr. Macfarlane in Havana, Cuba, and pointed out to him the disadvantages of revoking the trust. After these discussions, Mr. Macfarlane said "that he did not want to revoke the trust at that time."
On May 11, 1958, Mr. Macfarlane signed the instrument entitled revocation of trust which Mr. Kurtz had prepared. The Macfarlane chauffeur was present at Mr. Macfarlane's office in Havana at the time the document was executed in duplicate or *60 triplicate. He testified that after execution "they put them in envelopes" and that the original was delivered to Mrs. Macfarlane by her husband with instructions to mail it to The First National Bank in Miami. The revocation was not delivered to the trustee during the life of James Macfarlane.
In October 1958, Mrs. Macfarlane made another trip to Miami and conferred with the Trustee about the revocation of the trust; however, nothing was done. The trustee continued to administer the trust and sent Mr. and Mrs. Macfarlane reports and statements regularly. In May 1959, Mr. Edward Swenson again went to Cuba and talked with Mr. and Mrs. Macfarlane "to bring them up to date as to how the trust was doing."
The trustee thereafter continued the practice of periodically sending to Mr. and Mrs. Macfarlane letters and statements covering the trust. These letters and statements were addressed to Mr. Macfarlane's office address in Havana; he personally picked up his mail during 1958 and 1959, or had his chauffeur pick it up for him.
During the summer of 1959, Mr. and Mrs. Macfarlane began their usual trip around the world, and made arrangements with the trustee to supply funds for the trip. By letter dated October 23, 1963, Mr. and Mrs. Macfarlane instructed The First National Bank of Miami to pay their income taxes authorized by their accountant.
In October 1963, Mr. Macfarlane executed his last Will in Havana, Cuba. His Cuban attorney prepared the Will and Mr. Macfarlane told this attorney that he had revoked the trust. Mr. Macfarlane died in Cuba on December 15, 1964. Mrs. Macfarlane died in the United States about seven months later. She did not exercise the power to dispose of the trust proceeds by Will. After the death of Mr. Macfarlane an executed copy of the revocation was found among his personal belongings, and after the death of Jessie Macfarlane the bond-paper, first copy of the copies of the revocation which had been executed, was found among her personal belongings.
No magic art is necessary to revoke a trust. Where the right to revoke is reserved and no particular mode is specified in the trust agreement, any mode sufficiently manifesting an intention of the trustor to revoke is effective. See cases cited at 54 Am.Jur., Trusts § 77. Thus, the issue of revocation turns on: First whether the agreement prescribes a method of revocation and, second, if so, whether the prescribed method was exercised. The first point of inquiry may be particularized in the present case by restating it: Whether the agreement in this case prescribed a method which included the requirement that the instrument of revocation or a notice of revocation be delivered to the trustee.
Each party in this appeal agrees with the general statement of law that a valid trust once created, cannot be revoked or altered except by the exercise of a reserved power to do so. Restatement, Trusts (Second), § 330 (1959); Bogert, Trusts & Trustees, 2nd ed. § 998 (1962). If the method for the exercise of the power is set out in the trust agreement, then the power must be exercised in strict conformity to its terms. Phelps v. State Street Trust Co., 1953, 330 Mass. 511, 115 N.E.2d 382.
As a corollary of this last statement, it may safely be said that if the trust instrument reserves power to the trustor to revoke the trust by giving notice to the trustee in a specified form or manner, the trustor can exercise the power only by giving notice to the trustee in the prescribed manner. Hackley Union Nat. Bank v. Farmer, 1931, 252 Mich. 674, 234 N.W. 135. See cases at 54 Am.Jur., Trusts § 77, 1965 Supplement, page 17.
When we return to the case before us we recognize that the problem is basically to determine what the trust agreement *61 specified as to manner and mode of revocation. This is a question of interpretation of the trust agreement. Cf. Miller v. Exchange Nat. Bank of Tulsa, Oklahoma, 1938, 183 Okla. 114, 80 P.2d 209, 211.
In the instant case the agreement did not specifically mention notice to the trustee. It did say:
"* * * Provided always, nevertheless, that it shall be lawful for James Macfarlane, the grantor, at anytime during his natural life, by any deed or writing under his hand and seal, duly attested by two subscribing witnesses, or by his last will and testament, or other writing in nature thereof, duly attested by two subscribing witnesses, to alter, change, revoke, make null and void, the said use and uses, estate and estates, hereby limited or created * * *"
The trial judge interpreted this language to include a requirement of the delivery of the instrument of revocation to the trustee. In this we think he was in error.
In the interpretation of an agreement the first task of the court is to attempt to determine the intent of the parties at the time of the making of the instrument. See Wallace v. Julier, 147 Fla. 420, 3 So.2d 711 (1941); Watson v. St. Petersburg Bank & Trust Company, Fla. App. 1962, 146 So.2d 383. This determination must be made, if it reasonably can be so made, from the instrument itself. See Johns v. Townsend, 160 Fla. 213, 34 So.2d 565 (1948); Reid v. Barry, 93 Fla. 849, 112 So. 846 (1927).
In the paragraph quoted, the requirement, that the revocation be by deed or writing under seal duly attested by two subscribing witnesses, was met if the revocation instrument was legally effective at the time that it was executed and delivered to Mrs. Macfarlane for the purpose of mailing it to the Bank. Since notice to the Bank was not expressly provided, the important thing is that the legal act must be complete. Cf. Peoples National Bank of Greenville v. Peden, 1956, 229 S.C. 167, 92 S.E.2d 163.
Returning to the provisions of the trust agreement, it may be noted that the method of revocation by an agreement under seal properly attested is not the only method which is permitted. This provision is followed by a statement that the trust may be revoked by will or other writing in the nature thereof. It seems apparent that a will or other writing in the nature thereof would not be delivered to the Bank immediately upon its execution. Thus, it seems that notice to the Bank was not considered an essential for the act of the termination of the trust. Cf. cases collected in Bogert, Trusts & Trustees, 2nd ed., § 1001, Note 20. See Barnard v. Gantz, 1893, 140 N.Y. 249, 35 N.E. 430.
It may be argued that there is a possibility that Mr. Macfarlane later recalled the instrument from his agent. However, the only evidence which would tend to prove such a recall is the fact that he did not take further affirmative action when he received letters and reports from the Bank. We do not think that this evidence was sufficient to overcome the positive instruction given to his wife to mail the instrument. The instrument was placed in the control of the wife. It will be presumed that Mrs. Macfarlane was Mr. Macfarlane's agent for the purpose of completing the transaction. Cf. Restatement, Trusts (Second), § 330, Comment j. (1959). We are persuaded that this principle has particular application where, as here, the agent has some interest in legal action undertaken. Mrs. Macfarlane had actively attempted to dissuade her husband from the revocation and it was her relatives who would benefit by the retention of the instrument if further delivery was necessary.
This holding does not affect the rights of the Bank, or the validity of the acts of the Bank to the date of the entry of a final decree pursuant to this opinion. See discussion at Scott on Trusts, 2d ed, § 330.7 (1956).
*62 Having reached the conclusion that delivery of notice of termination or of the instrument of revocation itself was not a part of the trust agreement's requirement for revocation, and that the revocation was effective when executed and delivered to the wife for transmittal to the Bank, we hold that the trial judge erroneously determined that the trust was not revoked. We reverse with directions to enter a decree in accordance with this holding.
Reversed.