**In the Matter of the Trust Created Under the Maurice J. FLORANCE, Jr. Trust Agreement dated January 14, 1954.**

**Patricia FLORANCE and Frank Gaertner, Appellants,**

v.

**MERCANTILE NATIONAL BANK AT DALLAS, Trustee,**

and

**Florence A. Florance, Respondent.**

**No. C0–83–1292.**

Court of Appeals of Minnesota.

Jan. 11, 1984.

John A. Forrest, David A. Orenstein, Lindquist & Vennum, Ford W. Crouch, Strong, Tully, Tully & Crouch, Minneapolis, for Patricia Florance and Frank Gaertner.

Bruce Kruger, Robert E. Harding, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for Mercantile National Bank at Dallas.

Eric J. Magnuson, Ann B. Burns, Rider, Bennett, Egan & Arundel, Minneapolis, for Florence A. Florance.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

This appeal is from an order by the trial court dismissing the case for lack of jurisdiction. The dispute concerns whether a letter written on February 15, 1980 was a valid amendment to a trust.

The appellants originally filed this case in Hennepin County on September 14, 1981. They requested appointment as co-trustees of a trust pursuant to the amendment. The Mercantile National Bank at Dallas, the original trustee, filed a declaratory judgment action in Texas on December 11, 1981. The Minnesota case was indefinitely stayed. In the Texas case, a summary judgment was granted allowing the amendment, but a new trial has been granted. The appellants then reinstated the Minnesota case. The trial court found the notarized letter a valid amendment in form

but ineffective because the settlor did not survive the one-year notice period in the trust. We affirm in part and reverse in part.

## FACTS

In 1954, Maurice J. Florance, Jr., a Minnesota resident, then single and in the military service, created an inter-vivos trust. The trust's corpus now consists of an estimated 1000 oil and natural gas wells in New Mexico. Mercantile National Bank at Dallas was designated as trustee. Mr. Florance subsequently married and lived in Minnesota with his wife, Patricia, and their three children.

Under the trust, Texas law controls. The instrument provides for amendments:

> After the Grantor shall have attained the age of thirty-five (35) years; that is, on or after February 9, 1967, the Grantor may, by written instrument executed with the same formalities as this agreement and filed with the Trustee, alter, amend, modify or revoke this trust agreement and the trusts herein provided, in whole or in part; provided that written notice of such intention shall be filed with the Trustee one (1) year prior to the date upon which such alteration, amendment, modification or revocation shall become effective unless the Trustee shall waive such notice in whole or part.

Over the years, the trust has been amended six times. Each time, the Bank drafted the amendment for Mr. Florance and waived the one-year notice requirement. Through a power of appointment, Mr. Florance could amend his trust by his will.

Failing in health, Mr. Florance on February 15, 1980 attempted a seventh amendment to the trust. The amendment, in the form of a letter, named the appellants, Patricia Florance, his wife, and Frank M. Gaertner, his best friend, as additional trustees. Both are Minnesota residents. Mr. Gaertner was given the last word on disputes regarding the trust. The amendment also rearranged distributions so that Patricia Florance would be a joint tenant. It appears his purpose was to qualify for the marital deduction.

The amendment was drafted by Mr. Florance and hand copied by his wife, Patricia Florance. Mr. Florance signed the copy, had it notarized, and sent it to the Bank, thinking he had amended the trust. As the trial court noted:

> The Settlor intended the letter as an amendment, not merely as a notice of intent, and intended it to go into effect immediately, either expecting a waiver of the year's notice or overlooking that prerequisite. He acknowledged his signature before a notary public. Various of the provisions of the letter are imprecise or ambiguous. The Trustee telephoned the Settlor and urged him to have the amendment drafted by a lawyer. The Settlor responded that he didn't need a lawyer because the Trustee had arranged for proper drafting in the six previous amendments and could arrange for it again. The Settlor assumed and frequently stated that the amendment was in effect, but the Trustee never waived the year's notice.

On December 6, 1980, 10 months after mailing the amendment, Mr. Florance died.

The Bank began paying trust benefits to the children under the original trust agreement rather than as modified by the February 15 letter. Patricia Florance has not received a distribution since her husband's death in 1980.

Patricia Florance and Frank Gaertner, the appellants, filed a motion for appointment as trustees in Hennepin County on September 14, 1981. Shortly after filing, the Bank contacted the appellants and convinced them that the best way to handle the interpretation problems was a declaratory judgment action in Texas. The appellants agreed. The Minnesota proceedings were indefinitely stayed; the Texas declaratory judgment action commenced on December 11, 1981.

The Texas proceeding is long and involved. What is important for this case is that after a motion for a jury trial by Florence Florance, the settlor's mother, the

appellants moved for a summary judgment. Their motion was granted. The Texas court found that the February 15 amendment was a valid amendment and should be incorporated into the trust agreement. Florence Florance moved for a new trial and her motion was granted. The trial was set for December 5, 1983, but has been continued.

After the Texas court granted a new trial, the appellants reinstituted the present action in Minnesota. A hearing was held in Hennepin County on June 29, 1983. The trial court determined that the February 15 letter was a valid amendment, but ineffective because Mr. Florance had died before the one-year notice period had passed. The trial court held the amendment was not effective, the appellants were not trustees, and therefore the Minnesota Court had no jurisdiction under Minn.Stat. § 501.33 (1982). Patricia Florance and Frank Gaertner appealed.

## ISSUES

1. Was the February 15 letter amendment executed with the same formalities as the trust instrument?

2. Did the settlor's death before the one-year notice period prevent the trust amendment from being effective?

3. Is Minnesota a convenient forum for this litigation?

## ANALYSIS

■ This appears to be a case of first impression in Minnesota. Jurisdiction depends on the validity of the attempted amendment. If valid, the appellants are trustees and Minnesota has jurisdiction under the statute. If invalid, the appellants are not trustees and Minnesota has no jurisdiction. Once the trust was established, the settlor, Mr. Florance in our case, had no power to modify the trust unless he reserved that power in the trust agreement. *Sayers v. Baker*, 171 S.W.2d 547 (Tex.Civ.App.1943); Texas Stat.Ann. art. 7425b–22 (Vernon 1982); Restatement (Second) of Trusts § 331 (1959). "If the

settlor reserves a power to modify the trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances." *Id.*, comment d.

■ 1. The trust agreement allows Mr. Florance to amend the trust by a "written instrument executed with the same formalities as this agreement." The trial judge determined that a writing signed and attested to by a notary or similar official met the requirements of the trust. On review of this documentary evidence, this court can make its own determination of the meaning of the documents. *Ploog v. Ogilvie*, 309 N.W.2d 49, 53 (Minn.1981).

■ Decedent acknowledged his signature of the original trust agreement in the presence of a military officer. Decedent acknowledged his signature of the amendment before a notary public. The corporate trustee argues that the amendment must also be "legally drafted, typed, and signed by both the decedent and the trustee in the presence of a notary public." The trust agreement asks for a written document; its plain language says nothing about typewriting or legal drafting. The corporate trustee's interpretation is unduly burdensome and legalistic. No inference can be drawn from the trust instrument to justify such an interpretation. Conceding that portions of the amendment are ambiguous, it has no bearing upon whether the amendment was valid and effective. *In re Bush's Trust*, 249 Minn. 36, 42, 81 N.W.2d 615, 619 (1957).

■ The trial court held, and we affirm, that the February 15 letter amendment, signed and notarized, was executed with the same formalities as the trust agreement.

2. The trust agreement provides that, absent a waiver by the trustee, an amendment, executed in accordance with the formal requirements to amend the trust, "shall" become effective one year after notice to amend is filed. The corporate trustee and Florence Florance claim that, because Mr. Florance died before the

year was up, the amendment was ineffective. The trial court agreed, stating:

> The death of the settlor would presumably end any effect the letter might have had as a notice of intent, so that it did not become automatically effective February 15, 1981.

■ This court must interpret what Mr. Florance reserved as his power to amend the trust. *In the Matter of Schroll*, 297 N.W.2d 282 (Minn.1980). If there are ambiguities in the construction of the terms of that reservation, "the Court will adopt that construction which will result in sustaining the questioned provision to the end that the intention of the settlor or testator may be carried out." *Warner & Swasey v. Rusterholz*, 41 F.Supp. 498, 501 (D.Minn.1941). The court can look to the trust instrument as a whole to find such intent. *Macfarlane v. First Nat'l Bank*, 203 So.2d 57 (Fla.App.1967).

In *Macfarlane*, the settlor delivered an executed notice of revocation to his wife with instructions to mail it to the trustee. She failed to deliver the revocation, and the trustee did not receive it until after the settlor's death. The trust agreement did not contain an explicit requirement of delivery. The issue for the court was whether delivery to the trustee of notice of revocation was an essential act to revoke the trust.

To determine whether the delivery of notice to the trustee was essential to revocation, the Florida court looked to the intent of the settlor as expressed in the original trust instrument. The instrument provided that the settlor could revoke his trust by will, and so the court reasoned that, since the settlor would not ordinarily deliver his will to the trustee, the settlor must not have considered delivery of notice of revocation to be essential to revoke the trust. *Macfarlane v. First Nat'l Bank, supra* at 61. The court's reasoning follows:

> Returning to the provisions of the trust agreement, it may be noted that the method of revocation by an agreement under seal properly attested is not the only method which is permitted. This provision is followed by a statement that the trust may be revoked by will or other writing in the nature thereof. It seems apparent that a will or other writing in the nature thereof would not be delivered to the Bank immediately upon its execution. Thus, it seems that notice to the Bank was not considered an essential for the act of the termination of the trust. *Id.*

■ In the present case, Mr. Florance had reserved a special testamentary power of appointment in the trust. He could, by will, appoint beneficiaries and redistribute trust assets. Since he could amend the trust after his death by appropriate will provisions, the logical inference is that the decedent did not regard his survival until the amendment's effective date to be essential to amend the trust since survival would obviously not be a requirement to amend the trust provisions by will.

In *Peoples Nat'l Bank v. Peden*, 229 S.C. 167, 92 S.E.2d 163 (1956), the settlor reserved the power to revoke or modify her trust agreement upon prior written notice to the trustee. The agreement further provided that any such revocation or modification would take effect 60 days after notice had been given.

The settlor provided the trustee with written notice of her intent to revoke, but she died before the 60-day period ended. The South Carolina court held that the settlor had effectively revoked her trust since the agreement contained no requirement that the settlor be alive at the end of the 60-day notice period. *Id.* 92 S.E.2d at 166.

In *In re Reese's Estate*, 317 Pa. 473, 177 A. 792 (1935), the settlor died prior to the expiration of the notice period prescribed in the trust instrument, and the court reached the opposite conclusion. But the case is in perfect harmony with *Peoples Nat'l Bank*. The settlor in *In re Reese's Estate* explicitly stated, in her written notice of intent to amend, that the amendment was not to take effect unless she survived the notice

period. In accordance with her express instructions, the Pennsylvania court ruled that the amendment was ineffective.

In *Hackley Union Nat'l Bank v. Farmer*, 252 Mich. 674, 234 N.W. 135 (1931), the primary case relied on in *Peoples Nat'l Bank*, the settlor reserved the power to revoke by written instrument, signed, acknowledged and delivered to the trustee. The settlor mailed a duly signed and acknowledged revocation, but died before the trustee received it. The Michigan court held the revocation to be valid and effective and declined to infer a requirement that the settlor be alive when the revocation became effective.

Similarly, in *State Bank of Parsons v. First Nat'l Bank*, 210 Kan. 647, 504 P.2d 156 (1972), the settlor mailed a letter to the trustee revoking his trust and died before the trustee had acted upon the revocation. Since the trust agreement provided for revocation "upon written notice to the trustee—no more", the Kansas court concluded that the revocation was effective and rejected the trial court's conclusion that revocation could only be effected during the settlor's life by the trustee's transfer of the trust assets to the settlor before his death. *Id.* 504 P.2d at 160.

In *Lemke v. Schwarz*, 286 N.W.2d 693 (Minn.1979), an insured wrote a letter to his daughter designating her as a new beneficiary under his life insurance policies. The court held that the letter effectively changed the beneficiary designation even though the insured failed to comply with a policy requirement that the insured file a written request to change the beneficiary with the insurer. The fact that the letter was not received by the new beneficiary or the insurance company until after the insured's death did not, in the Minnesota Supreme Court's view, prevent the beneficiary designation from becoming effective.

■ The above cases indicate a common principle that a valid instrument is effective notwithstanding the settlor's subsequent death, unless the governing instrument or settlor explicitly provides otherwise. We adopt that principle.

■ Decedent in this case executed and filed his amendment, thereby completing all of the steps the trust agreement requires for a valid amendment. We are not disregarding the one-year notice. We simply refuse to add to the notice provisions an additional requirement that the decedent survive the notice period for an amendment to become effective. Settlor's death during the notice period does not invalidate settlor's amendment in the absence of specific language in the trust agreement requiring the settlor to survive the notice period.

Respondents attempt to distinguish *Peoples* on the basis that the 60-day notice period in that case was for the administrative benefit of the trustee and that the one-year period in this matter was for a different purpose. They allege that the notice period was designed to give the decedent time, after filing notice of amendment, to reflect on his decision and to prevent "improvident" amendments.

Appellants maintain that, since neither the trust agreement nor the amendment requires the decedent to be living at the expiration of the notice period for the amendment to become effective, it is not necessary to ascertain the purpose of the notice period.

■ First, the notice period does not protect the decedent from an improvident amendment because the decedent, by exercising his special testamentary power of appointment, could circumvent notice requirements in the distribution of the income.

■ Secondly, the trust instrument itself grants the trustee the power to waive the one-year notice "in whole or in part." If the settlor intended the notice period for his benefit, he could have denied the corporate trustee the power to waive it.

Third, the asset composition of this trust is certainly complex. Respondents contend that we cannot infer that a trust amendment or revocation could take a year or longer to implement. Certainly the corporate trustee would be required to pre-

**304**

pare, record, and process numerous real estate documents assigning interests in the leases and assignments of contracts with the gas producers. Financial accounting and oil and gas well evaluation are complicated and involve extensive government regulations. Valuation of the trust assets for tax purposes is also a complicated matter considering the nature of this particular trust.

Consequently, we conclude that *Peoples* is not distinguishable because of the differences in the length of the notice period. Considering the whole record, we conclude, in this trust, that the notice period was primarily for the trustee's benefit. The court's obligation is to attain the purposes of the trust, which is to effectuate the intent of the settlor.

■ 3. The respondents also claim that Minnesota is not a convenient forum for this litigation. Forum non conveniens is governed by practical considerations. A court should determine:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 46 (Minn.1978), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521, *reh'g denied*, 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

In a recent case, the Minnesota Supreme Court refused to exercise jurisdiction in a trust matter where another jurisdiction had concurrent jurisdiction. *In the Matter of Cary*, 313 N.W.2d 625 (Minn.1982). There were lawsuits in both jurisdictions. The court deferred to the District of Columbia courts because the parties, witnesses, assets, records, and the trust administration were all in D.C. and no benefit was claimed for Minnesota exercising jurisdiction.

■ Here, however, all the beneficiaries and two of the three trustees live in Minnesota. Only the corporate trustee is in Texas. The decedent's estate is being administered in Minnesota. Because most of the estate's assets are in the trust, the administration cannot be completed until this dispute is resolved.

Texas is merely the location of the custodial corporate trustee. The real property which comprises the corpus of the trust is located in New Mexico, not Texas. The Minnesota courts are closer to resolving the validity and effectiveness of the amendment than Texas. Minnesota has an expedited proceeding for clarifying ambiguities that is unavailable in Texas. Minn. Stat. § 501.35 (1982). There are real advantages to proceeding under Section 501.-33 compared to the pending Texas declaratory judgment proceedings. This forum provides the most economical, logical and efficient method for construing the trust amendment, supervising the administration of the trust, and concluding the estate proceeding.

### DECISION

The trust agreement required an amendment be executed with the same formalities as the trust agreement. A written amendment, in the form of a letter, signed and notarized, was executed with the proper formalities.

The settlor's death before the notice period expired did not prevent the amendment's effectiveness. The settlor never intended to condition an amendment's effectiveness on his survival of the notice period. The notice period, in any event, was primarily for the corporate trustee's benefit.

Because the amendment was effective, the appellants are trustees. Minnesota, therefore, has jurisdiction and is a convenient forum for this litigation.

**Affirmed in part, reversed in part, and remanded.**

PARKER and SEDGWICK, JJ., took no part in the consideration or decision of this case.